John J. O'Neill, as Administrator of the Estate of Helen M. O'Neill, Deceased, Appellant, *v.* City of Port Jervis et al., Respondents, Impleaded with Others.

(Argued March 26, 1930; decided May 6, 1930.)

*Ralph E. Roberts* for appellant. The respondents' obstruction was not only a nuisance, but was actionably negligent. (*Murphy* v. *Leggett,* 164 N. Y. 121; *Callanan* v. *Gilman,* 107 N. Y. 360; *Welsh* v. *Wilson,* 101 N. Y. 254; *Shafir* v. *Sieben,* 233 S. W. Rep. 419.) When a person receives a license from the public authorities to interfere with a public street, he impliedly agrees to perform the act in such a manner as to save the public from danger and the municipality from liability; and this is a duty which he cannot escape, even by turning the work over to an independent contractor. (*Village of Port Jervis* v. *First Nat. Bank,* 96 N. Y. 550; *Lubelsky* v. *Silberman,* 49 Misc. Rep. 133; *Scheller* v. *Silbermintz,* 50 Misc. Rep. 175; *Friedman* v. *City;* 63 Misc. Rep. 310; *Hart* v. *McKenna,* 106 App. Div. 219; *Babbage* v. *Powers,* 130 N. Y. 281; *Schiverea* v. *Brooklyn Ry. Co.,* 89 App. Div. 340; *Deming* v. *Terminal Ry.,* 49 App. Div. 493; 169 N. Y. 1; *City of New York* v. *Corn,* 133 App. Div. 1; *Shafir* v. *Sieben,* 233 S. W. Rep. 419.) The obstruction was a nuisance growing out of negligence. (*McFarlane* v. *Niagara Falls,* 247 N. Y. 340; *Tullgren* v. *Amoskeag*

*Mfg. Co.*, 133 Atl. Rep. 448; *Hayes* v. *Brooklyn Hts. Ry. Co.*, 200 N. Y. 183.) Whether the obstruction was temporary, necessary and reasonable, was a question of fact for the jury, and the trial court erred in deciding it as matter of law. (*Kurlanchik* v. *Sklamberg,* 56 Misc. Rep. 473; *Murphy* v. *Leggett,* 164 N. Y. 121; *Callanan* v. *Gilman,* 107 N. Y. 360.) Respondents' tortious obstruction was not only an actual cause of the death of plaintiff's intestate, but it was the proximate or legal cause. (*Ring* v. *Cohoes,* 77 N. Y. 83; *Sweet* v. *Perkins,* 196 N. Y. 482; *Fine* v. *Interurban Ry. Co.,* 45 Misc. Rep. 587; *Shafir* v. *Sieben,* 233 S. W. Rep. 419; *Murphy* v. *Leggett,* 164 N. Y. 121; *Palsgraf* v. *Long Island R. R. Co.,* 248 N. Y. 339.)

*Wm. A. Parshall* for city of Port Jervis, respondent. The city of Port Jervis is not chargeable with negligence in permitting such obstruction of the sidewalk and street in front of the Cohen property as existed at the time of the accident. (*Adelman* v. *Altman,* 209 Mo. App. 583; *Cohen* v. *Mayor,* 113 N. Y. 532; *Wright* v. *Bank of Metropolis,* 110 N. Y. 237; *Colt* v. *Owens,* 90 N. Y. 368; *Hedges* v. *H. R. R. R. Co.,* 49 N. Y. 223.) The obstruction was not the proximate cause of the injuries sustained by plaintiff's intestate. (*Storey* v. *Mayor,* 29 App. Div. 316; *Murphy* v. *Leggett,* 164 N. Y. 121.)

*Murray G. Jenkins, William B. Shelton* and *K. Courtenay Johnston* for Isaac Cohen, respondent. No action in negligence lies against the respondent Isaac Cohen, for he owed no duty to the plaintiff's intestate. (*Murphy* v. *Leggett,* 164 N. Y. 121; *Walsh* v. *Wilson,* 101 N. Y. 254; *Martin* v. *Pettit,* 117 N. Y. 118; *Palsgraf* v. *Long Island R. R. Co.,* 248 N. Y. 339; *Robertson* v. *Mayor,* 7 Misc. Rep. 645; *Congreve* v. *Smith,* 18 N. Y. 79; *Dickinson* v. *Mayor,* 92 N. Y. 584; *McFarlane* v. *City of Niagara Falls,* 247 N. Y. 340.) Since the obstruction complained of was the deposit of building materials under due permit,

and since there was no allegation of negligent maintenance, it was not necessary to submit to the jury the questions of necessity, reasonableness and permanence. (*Callanan v. Gilman*, 107 N. Y. 360; *Murphy v. Leggett*, 164 N. Y. 121; *Cohen v. Mayor*, 113 N. Y. 532; *Rehberg v. Mayor*, 91 N. Y. 137; *Kelly v. Doody*, 116 N. Y. 575; *Loberg v. Amherst*, 87 Wis. 634; *Cuilo v. New York Edison Co.*, 85 Misc. Rep. 6; *Pettengill v. City of Yonkers*, 116 N. Y. 558; *Russell v. Village of Canastota*, 98 N. Y. 496; *McMahon v. Second Avenue R. R. Co.*, 75 N. Y. 231.) The question of proximate cause was one of law for the court. (*Hoffman v. King*, 160 N. Y. 618; *Read v. Nichols*, 118 N. Y. 224; *Cole v. German Savings & Loan Assn.*, 124 Fed. Rep. 113; *Beetz v. City of Brooklyn*, 10 App. Div. 382; *McDonald v. Metropolitan St. Ry. Co.*, 167 N. Y. 66.) Even if negligence on the part of the defendant Cohen could be proved, it would not be the proximate cause, or one of concurring proximate causes, of the accident. (*Leeds v. New York Telephone Co.*, 178 N. Y. 118; *Trapp v. McClellan*, 68 App. Div. 362; *Storey v. Mayor*, 29 App. Div. 316; *Cole v. German Savings & Loan Assn.*, 124 Fed. Rep. 113; *Laidlaw v. Sage*, 158 N. Y. 73; *Robertson v. Mayor*, 7 Misc. Rep. 645; *Purcell v. Lauer*, 14 App. Div. 33.) There was contributory negligence on the part of the plaintiff which must be imputed to his intestate. (*Mangan v. Brooklyn R. R. Co.*, 38 N. Y. 455; *Prendergast v. New York Central & H. R. R. R. Co.*, 58 N. Y. 653; *Nolan v. King*, 97 N. Y. 565; *McFarlane v. City of Niagara Falls*, 247 N. Y. 340; *Weston v. City of Troy*, 139 N. Y. 281; *Whalen v. Citizens' Gas Light Co.*, 151 N. Y. 70.)

CRANE, J. Front street in the city of Port Jervis, N. Y., runs approximately north and south and is one of the main thoroughfares of the municipality. Isaac Cohen, at the times herein mentioned, was the owner of property on the east side of Front street, about 230

feet south of Sussex street. A building was being erected on this lot, and the sidewalk of Front street was dug up and barred off to pedestrians; material was also piled in the highway alongside of what had been the sidewalk, extending out halfway into the street. Traffic in Front street is very heavy. Just to the south of Cohen's property there is a flatiron building and a fountain, which divide traffic. The highway at this point is much wider than to the north, so that two lines of vehicles can go each way at the flatiron building, but merge into one line each way up near Cohen's place.

The 25th day of June, 1927, was a Saturday, and Front street was crowded. People came to do their shopping and marketing on that night. Automobiles filled the highway, proceeding along about three feet apart, and were naturally more congested at the point where Cohen's building material occupied about half the street. A trolley track also runs through Front street.

Among those who had come out to do the Saturday night shopping was John O'Neill, his wife, Theresa, with their little boy, nine years old, and the child Helen Marie, about two years of age. They were proceeding about seven o'clock in the evening along the easterly side of Front street, going south, until they came to the barriers erected by Cohen. Here they were halted, and with the others, were turned from the sidewalk into the street amidst the automobile traffic. They could have done one of three things: walked out in the street around the building material, or crossed the street, whenever traffic permitted, or turned back, and gone somewhere else. This little family did what other people in the street were doing; they started to walk out in Front street and around the building material. The father was going first, holding the little girl by his right hand; she was, therefore, on the outside. As they were proceeding in this way, they met other pedestrians coming in the opposite direction, so that in the middle of the street,

along side of the building material, with a jam of automobiles about them, O'Neill, with his little girl, had to make way, or give room for those in the same situation who were going up the street, while he was going down. A passing automobile struck and killed the child. On these facts, does the law afford any relief, or give any remedy?

The plaintiff, as administrator of Helen Marie O'Neill, has sued the city of Port Jervis, Isaac Cohen and George D. Sinley. The latter was the operator of the automobile. The case was dismissed as to him, with the consent of the plaintiff, as there was no evidence of his negligence. The cause of action against the city and Cohen, if any, rests upon the illegal usurpation of the sidewalk for private purposes, and the shifting of pedestrians into danger.

First, was the use made of the sidewalk of Front street unlawful?

The primary purpose of streets is use by the public for travel and transportation, and the general rule is that any obstruction of a street or encroachment thereon which interferes with such use is a public nuisance. (*Callanan* v. *Gilman*, 107 N. Y. 360.) An adjoining property owner may, however, temporarily use a portion of the street or highway for taking goods or merchandise in or out of his premises. (*Welsh* v. *Wilson*, 101 N. Y. 254.) Likewise, a person engaged in erecting a building may be obliged to use the sidewalk or street temporarily for the piling or storing of material, such as lumber, brick and sand, or for the unloading of articles upon the sidewalk, or while constructing foundations or other parts of the building. All these uses, however, must be reasonable, temporary and such as is usual and customary in connection with the particular business or construction. (*Murphy* v. *Leggett*, 164 N. Y. 121.) The municipalities generally provide rules or regulations controlling the manner and times in which these interruptions may be

made, but beyond the regulation of these necessary and temporary uses, no municipality has the power to authorize the appropriation of a sidewalk for private purposes.

The city of Port Jervis had adopted the following ordinance on this subject (§ 4): "No person shall place any material for building or any other purpose upon any public street within the city without permission in writing from the mayor or common council. Such permission shall not be for a longer period than three months; nor shall it authorize the obstruction of more than one-third of the sidewalk nor more than one-half of the carriage way, nor the placing of materials nearer than three feet to any street railroad track."

This ordinance apparently was modified in behalf of Isaac Cohen, on the 23d day of May, 1927, to permit him to construct a brick and concrete building on his lot at No. 42 Front street, and to use about eight feet of the street in front of the lot for the purpose of storing building material and to close off the sidewalk at intervals during the time of the erection of the building.

When the owner commenced construction, building material was piled in the street to the extent of eight feet, pursuant to this permission, and remained there until the time of the above stated accident. With this act no fault can be found, as it was within those reasonable uses permitted by the law.

As to the sidewalk, however, we have a different situation. There was no necessity for storing material upon the sidewalk to the exclusion of all use by pedestrians for any great length of time. While the foundations were being dug, the material carried in and out of the lot or building, and while the tanks were being built under the sidewalk, temporary obstruction was of course necessary. The tanks were built in two days. Testimony given upon the trial shows that the work of excavation started about May 10, 1927, and that shortly thereafter the sidewalk was completely blocked off and dug up until

the time of the accident, June 25, 1927. No provision was made for travelers on foot. At night, Sundays and holidays the way remained blocked and used for machines and other building implements. This was not the closing off of the sidewalk at intervals, as permitted by the amended ordinance, or at least, it would be a question for a jury to determine whether on all the facts thus appearing, such continued usurpation of the sidewalk for building purposes to the exclusion of all foot passengers was reasonable, necessary and temporary. The work of erecting this comparatively small building apparently did not require the closing of the sidewalk for almost thirty days. The jury might find that the work could have been carried on the customary way by permitting people to walk on a path or boards or some construction, when the work was not going on requiring digging under the sidewalk or the carrying in and out of materials. We are all familiar with such temporary uses.

Rights are never absolute and independent of those of others. The right to shut off a sidewalk from use by the public must be exercised in recognition of the fundamental purpose of sidewalks, and the rights of pedestrians. These latter must put up with the inconvenience of getting by the best way they can, when necessity and reasonable use so demand, but the lot owner's right to thus bar the public ends with the reasonable necessity and the requirements of the occasion. Allowing a very liberal interpretation to the words, " at intervals," and realizing that the work of builders and contractors as carried on alongside of highways cannot be too narrowly restricted, it may be that this work did not call for the closing of the sidewalk for thirty days or thereabouts. In the usual and customary way of doing such work, would not the builder have provided some sort of footpath at times when work had ceased or material was not being carried in and out? These are questions which a jury should answer as questions of fact. Whatever the situation, the city was

fully acquainted with it, and if Isaac Cohen unreasonably and unlawfully used the sidewalk for the storing of materials to the exclusion of the public, the city had knowledge of it, and was required to act. A question of fact arose as to whether the city and Cohen were negligent in maintaining and in failing to remove unlawful and illegal obstructions.

Assuming that the barriers were illegal, we then come to the next question, as to the cause of death. Was Helen Marie O'Neill killed because and in consequence of the illegal obstruction of the sidewalk? Where were John O'Neill and his little girl to go when faced with this obstruction to their passage? Out into the street, jammed with traffic, through which automobiles were passing at its narrowest point. In front of No. 42 Front street the roadway had narrowed like the neck of a bottle. Four lines of vehicle traffic, a block away, had converged into two lines, one north and one south, and the street was still further narrowed by the building material extending out eight feet. This Cohen and the city officials knew. By this point was passing on Saturday night, when no work was being done on the building, the heaviest traffic. That the street might be very dangerous for pedestrians was apparent to any one who would pause to reflect. O'Neill and his family had the right to go by; the street was not closed; their rights were equal to those of any others; they were not called upon to desist from their purpose and return home. Others were going and coming around the pile of dirt, and the O'Neills followed. This was the way prepared by the city and by Cohen; this was the pathway substituted for the one torn up; this was the direction that pedestrians were directed to take. If Cohen had stood upon the sidewalk, or the city personified had been there and forced O'Neill or his little girl into the wheels of traffic, no doubt would exist in the minds of any one as to liability for consequences. Is the conclusion any different

because necessity, and not force, is the moving cause? The city and Cohen created the necessity which led to danger. The risk was the direct result of the obstructions on the sidewalk. The accident would not have happened but for the unlawful obstructions.

Suppose the city and Cohen had constructed a new pathway or sidewalk alongside an unguarded and dangerous hole into which pedestrians were apt to fall, and a person following this path without fault fell into the trap. Would not the injury received be the direct consequence of the danger created? The cause — legal cause — would be the construction of a dangerous way. The result would be no different if a stranger, instead of the city or Cohen, had dug the hole. The danger in law to pedestrians would not be the hole, but the unguarded and unprotected pathway. Such is this case. The city and Cohen, we must assume for this point, shut off the sidewalk and established a footpath around the pile of dirt in the street, rendered dangerous by heavy automobile traffic. The danger is created not by the automobilists in the street, where of necessity they must be, but by the establishment of an unguarded footpath in close proximity. People frequently, in our large cities, must stand in the street alongside car tracks, awaiting for cars, and are protected by barriers, signs or warnings directing traffic. No such protection was furnished the O'Neill family. They were guided into, and not out of, danger. The collision between the little girl and a passing automobile was the ordinary and natural result of the unlawful obstruction on the sidewalk, compelling passersby to go out into the middle of the street around the projecting pile of dirt. At least, it would be a question for the jury to determine whether a reasonably prudent man would have anticipated the danger and the risk. To constitute negligence establishing liability in this case there must have been not only a violation of duty by Cohen and the city toward the public, the erection and

maintenance of an unlawful obstruction, but the injury must have been the natural consequence of the alleged negligent act. (*Knox* v. *Eden Musee Co.*, 148 N. Y. 441, 462.) Whether it was so or not was a question for the jury.

Legal or proximate cause is always dependent upon the facts of a particular case, and it is for this reason that the words are beyond definition or conclusive explanation. Very often it is confused with the preliminary question whether there is any negligence at all. The difficulty of applying general rules drawn from previous incidents to a new set of circumstances is illustrated in *Palsgraf* v. *Long Island R. R. Co.* (248 N. Y. 339). The general underlying principle of that case is that the negligence does not exist unless there is a reasonable likelihood of danger as a consequence of the act complained of. It found expression in the prevailing opinion in these words: " The risk reasonably to be perceived defines the duty to be obeyed, and risk imports relation; it is risk to another or to others within the range of apprehension." The possibility of an accident must be clear to the ordinarily prudent eye. This court further said in that case: " The range of reasonable apprehension is at times a question for the court, and at times, if varying inferences are possible, a question for the jury."

We are, therefore, of the opinion that in this case the jury must determine whether the risk of being hurt in passing traffic was reasonably to be anticipated by those who shut off the sidewalk, and turned passersby into the street. Would the danger of such an act be apparent to the ordinarily prudent man? If so, there would be negligence. This is the measure by which we seek to determine the question of liability in tort cases through the means of a judge or jury.

To attempt to phrase a different rule for liability for negligence, one which will be more inclusive or exclusive,

fitting exactly every circumstance which may arise, has proved an impossible task to those who have given intensive study and application to the subject of torts. (See the discussion and differences of opinion arising in such articles as "Legal Cause in Actions of Tort," 25 Harvard Law Review, 103, 228, 310; "Legal Cause," 72 Univ. of Pa. Law Review, 211, 343; "Proximate Consequences in the Law of Torts," 28 Harvard Law Review, 10, "Proximate Cause," 39 Harvard Law Rev. 149, and a recent review of the *Palsgraf* case in Yale Law Journal, February, 1930, p. 449, "The Unforeseeable Consequences of a Negligent Act.")

If we turn from these legal and metaphysical discussions to the reasoning of the ordinary citizen, in behalf of whom all our laws are made, we find in the testimony of John J. O'Neill, the plaintiff, whom we may consider a fair representative, this mental reaction, as expressed to the Mayor of Port Jervis: "I told him if it wasn't on account of the damned blocked sidewalk, that girl would have been alive."

A similar case to this arose in Missouri. (*Shafir* v. *Sieben*, 233 S. W. Rep. 419, May 24, 1921.) A pedestrian was unlawfully excluded from the use of the sidewalk by reason of obstructions placed on it by a building contractor, and compelled to go into the street, where he was struck by an automobile. The Supreme Court of Missouri decided that he was deprived of his legal rights and entitled to damages. The rule applied was stated in the following language: "The liability of a person charged with negligence does not depend on the question whether, with the exercise of reasonable prudence, he could or ought to have foreseen the very injury complained of; but he may be held liable for anything which, after the injury is complete, appears to have been a natural and probable consequence of his act or omission."

On the question of negligence this is the same thing as saying that a reasonably prudent man will anticipate

natural and probable consequences. An idea may be expressed in many different ways, and many of our differences arise out of a choice of expression. What are the natural and probable consequences is always open to question.

The city, in the *Shafir* case, was also held to be negligent in permitting an unreasonable and unnecessary obstruction of the street to be maintained in violation of law.

We, therefore, decide that the dismissal of this cause of action against Isaac Cohen and the city of Port Jervis was improper, and that the questions involved must be submitted to a jury.

*First.* Was the obstruction on the sidewalk of Front street unreasonable and unnecessary, in view of all the circumstances, and in violation of the ordinance; was the city negligent in not removing it? *Second.* Was the death of Helen Marie O'Neill the natural consequence of this obstruction? A *third* question must also be submitted dealing with the contributory negligence of the father. He could not blindly take his child into danger. His negligence, if any, would be imputed to the child. He, too, was bound to exercise reasonable care under the circumstances and conditions as they existed at the time. (*McFarlane* v. *City of Niagara Falls*, 247 N. Y. 340.) Section 131 of the Decedent Estate Law (Cons. Laws, ch. 13) provides that in any action to recover damages for causing death, the contributory negligence of the person killed shall be a defense to be pleaded and proven by the defendant.

That the barricade across the sidewalk of Front street may also have constituted a public nuisance, does not bar the plaintiff from maintaining a cause of action for negligently failing to remove the same and to restore a sidewalk or footpath. (See the *McFarlane* case, just cited.) The case was tried upon that theory, and not on that of nuisance.

The judgment of the Appellate Division and that of the Trial Term should be reversed, and a new trial granted, with costs to abide the event.

CARDOZO, Ch. J., POUND, LEHMAN, KELLOGG, O'BRIEN and HUBBS, JJ., concur.

Judgments reversed, etc.