SADIE F. RUSSELL, as Administratrix of the Estate of ELINOR G. FLYNN, Deceased, Appellant, v. STATE OF NEW YORK, Respondent. (Claim No. 25593.)

Third Department, December 29, 1944.

*Daniel J. Finn*, attorney (*Leon M. Layden* of counsel), for appellant.

*Nathaniel L. Goldstein, Attorney-General* (*Orrin G. Judd, Solicitor General; Arthur W. Mattson, Assistant Attorney-General, Joseph A. Drago, Deputy Assistant Attorney-General*, of counsel), for respondent.

BREWSTER, J. This is an appeal from a judgment of the Court of Claims dismissing upon the merits, after trial, the claim filed herein. The claim arises out of an automobile accident which happened on the Lake George-Bolton highway on the 4th of July, 1938, at about four o'clock in the morning. Decedent, Elinor G. Flynn, was the only passenger in a car owned and operated by Donald O. Cunnion. He was traveling south, that is, towards the village of Lake George, and at or near a point known as the Maupai Curve the car left the highway and struck a pole. As a result of this accident Miss Flynn was injured and died en route to a hospital at Glens Falls.

The undisputed evidence of the soft, friable condition of the westerly shoulder in the sharp curve of the highway, within which stood a telegraph pole, but ten and one-half feet from the paved portion, along with other facts and surrounding circumstances and conditions clearly shown, and without conflict of evidence, compels a finding of negligence on the part of the State in the construction and maintenance of the highway where the accident occurred. The court below has exonerated the State in this regard. While the court did find that no negligence of the State caused or contributed to the accident, still, based as this was upon the findings that the State's negligence was non-existent, there has thus been no determination of the causal relation of the State's negligence to the accident in question. For this reason there should be a new trial, because there is evidence sufficient to sustain a finding of such causal connection. (*Shaffer* v. *State of New York*, 256 App. Div. 1053 [4th Dept.]; *Schill* v. *State of New York*, 258 App. Div. 769 [3d Dept.]; *Taylor* v. *State of New York*, 262 App. Div. 657 [3d Dept.], affd. 288 N. Y. 542.) I think this is so despite whatever finding the evidence justifies respecting the conduct of the driver of the car. Claimant's intestate has been rightly absolved from any contributory negligence. The fact that the driver moved his vehicle partly over onto the shoulder to avoid the oncoming car was not negligence on his part. The shoulder was constructed and maintained, among other things, for such purpose, and for such use it was incumbent upon the State to keep it in a reasonably safe condition, taking into account the circumstances of the highway and

its surroundings. Here we are immediately concerned with such use of the shoulder by the right-hand wheels of the car for a distance of forty feet on a curve. The shoulder was a part of the highway. (*LaRue* v. *Tiernan*, 260 App. Div. 337, affd. 285 N. Y. 550.) If it be said the driver was negligent in having been forced off the highway by the lights of the car approaching him, his then situation and predicament could easily be said to have brought the State's negligence into active participation in the fatality. There were then but forty feet traveled to the glancing collision with the pole, after which the car regained the pavement in normal position after a journey of the car's length, twenty feet. In the split-second period during that forty-foot journey the relatively unbanked and soft, friable condition of the shoulder may well be said to have been a direct cause of the collision, say naught further, even as to maintenance of such a highway in such relative position to a telegraph pole. The undisputed history of over a score of similar accidents at this very place is legitimate and persuasive proof that the improper construction of the shoulder, both in design and material, was an active cause in having held and drawn the car in which deceased was riding, to her death. To say that the sole and proximate cause of the death was the act of the driver in not having *further* reduced his prior speed of forty miles per hour prior to his meeting the blinding headlights, or in the extreme brevity of the subsequent time lapse, seems unreasonable. '' There may be more than one proximate cause of an accident, if each of the causes asserted can be seen to have been an efficient one, without which the injury resulting would not have been sustained.'' (*Sweet* v. *Perkins*, 196 N. Y. 482.) And, of course, if in the light of the clear and uncontradicted proof of the State's negligence aforesaid, should further litigation establish such to have been a proximate cause of the accident, a right to recover would follow.

The judgment dismissing the claim should be reversed on the law and on the facts and a new trial ordered.

FOSTER, J. (dissenting). This is an appeal from a judgment of the Court of Claims dismissing upon the merits, after trial, the claim filed herein. The claim arises out of an automobile accident which happened on the Lake George-Bolton highway on the 4th of July, 1938, at about four o'clock in the morning. Decedent, Elinor G. Flynn, was the only passenger in a car owned and operated by Donald O. Cunnion. He was traveling south, that is, towards the village of Lake George, and at or

near a point known as the Maupai Curve the car left the highway and struck a pole. As a result of this accident Miss Flynn was injured and died en route to a hospital at Glens Falls.

Cunnion was the only eyewitness to the accident who testified. If there were other witnesses they were not known or not found. He testified that as he approached the curve, which was to his left in the direction he was proceeding, the speed of his car was about forty miles an hour, and as he got onto the curve at a point where there is a culvert he let up on the gas somewhat. From the culvert there is an upgrade to a point approximately opposite the pole against which his car collided. The map in evidence would indicate the distance between these points at about 200 feet, and the grade for that distance at 8.25 feet, or a trifle over 4%. Cunnion further testified that another car, traveling in the opposite direction, came over the brow of the rise; that its lights bothered his vision, and he swung his car wide to the right, and in doing so the right rear wheel slipped onto the shoulder of the road and started to pull with considerable force to his right (west) towards the ditch; that he accelerated his speed in an attempt to bring the car back on the road and in doing so his car skidded against the pole, came back to the highway and stopped. According to the map the pole was about ten feet to the west from the edge of the metal part of the highway.

Claimant's case was built upon the theory that the State was negligent in the construction and maintenance of the highway in two particulars. First, that it was improperly banked. The proof showed that the curve was twenty degrees, and that the maximum elevation on the west side of the curve was seventeen inches above the east side and the minimum elevation was twelve inches. The engineer, called for the claimant, testified that the banking on the curve should have been thirty inches or one and one-half inches to each lateral foot. He also testified that the shoulder along the curve on the west side was of improper construction, being made of sand and material containing clay. This, he said, was too fine and lacked cohesion. In both of these particulars the banking and the construction of the shoulder on the west side, the witness said the State had not followed proper and approved engineering practices. His qualifications were conceded and his opinion testimony was not contradicted by any testimony of a like character.

There was testimony that several other accidents had happened at or in close proximity to the curve, although the circumstances of each case were not shown; but it also appeared

that during the summer months the traffic there was exceptionally heavy. Presumably, therefore, a vast majority of motorists found the road reasonably safe for travel. The curve was recognized as dangerous, but there were adequate signs to warn the public of this fact. These matters, however, may be regarded as of minor importance because Cunnion, on his own admission, was thoroughly familiar with the road and the place where the accident happened. He lived at Glens Falls and apparently had traveled the road a great number of times.

Upon the proof presented perhaps both the State and Cunnion might be found negligent. The State for improper construction and maintenance of the highway, and Cunnion for approaching a known dangerous curve at forty miles an hour at four o'clock in the morning. I doubt if any negligence can be predicated against the State for failure to bank the curve in accordance with the engineer's theories. The court below in its opinion indicated that the State was not negligent because of the soft shoulder on the west side of the highway, and appeared to rely upon the opinion in *Best* v. *State of New York* (203 App. Div. 339) wherein it was held that putting loose gravel in worn places along the side of a highway was not negligent. In this case, however, the whole upper layer of the shoulder to a depth of several inches was composed of fine sand and clay, and it might well be found that this was not a reasonably safe condition. It probably should have been envisaged by the State that in an emergency travelers might have to use the shoulder of the road and therefore I think that a duty rested upon the State to provide a shoulder that was reasonably safe for travel.

But assuming all this, the real question in the case is the proximate cause of the accident. The court below found in effect that Cunnion's negligence was the sole cause of the accident. The nub of its decision rests in its rejection of claimant's theory that the soft shoulder held the wheels of the car and caused it to skid and collide against the pole. A witness for claimant testified that the wheel tracks were twelve to fourteen inches wide, and that the material composing the shoulder had a tendency to roll under pressure. The tracks, however, went in a straight line and directly from the pavement to the pole. There appears to be no dispute over this. The State called a trooper who testified that the tire tracks were only six inches wide and sank only slightly into the shoulder. It was for the trier of the facts to say which of these witnesses he would believe, and quite evidently he accepted the testimony of the trooper. That being so, his final conclusion that the car went

off the curve on a tangent straight to the pole, due to its speed and not the softness of the shoulder, was supported by his view of the testimony. He was not of course bound to accept Cunnion's statement that he felt his car pull to the right and that it skidded against the pole. The fact that the tracks went straight to the pole is evidence that there was no skidding.

From a cold record such as this we are hardly in a position to reject the decision of the court below based on the analysis given, since on the real turning point of the case there is a conflict of testimony that involves the credibility of witnesses, plus a physical factor that is undisputed which tends to support the decision of the trial court. The judgment should be affirmed.

BLISS and HEFFERNAN, JJ., concur with BREWSTER, J.; FOSTER, J., dissents in an opinion in which HILL, P. J., concurs.

Judgment reversed on the law and facts and new trial granted, with costs to appellant to abide the event. The court reverses all findings of fact and annuls all conclusions of law.