LEWIS E. SHAW, Claimant, v. STATE OF NEW YORK, Defendant.
(Claim No. 28782.)

JEANETTE V. SHAW, Claimant, v. STATE OF NEW YORK, Defendant.
(Claim No. 28783.) ·

Court of Claims, November 17, 1949.

*Paul Muscarella* for claimant.

*Nathaniel L. Goldstein, Attorney-General* (*Frank M. Noonan* of counsel), for defendant.

GORMAN, J. In the evening of September 7, 1947, claimant Lewis E. Shaw, with his wife and infant son, was driving his 1940 Oldsmobile convertible coupe in a westerly direction along State Highway Route No. 72. It was still daylight and the weather was clear and dry. The macadamized highway in that vicinity is twenty feet wide and is winding and hilly, with sharp curves and grades. At a point near the intersection of the highway with a gravel road leading northerly to Nicholville, the automobile left the road and collided with a stone and tree which resulted in the destruction of the car and serious injuries to Mrs. Shaw.

As claimants approached the place of the accident, they came down a fairly long 7% to 9% grade to East Brook, which crosses just east of the intersection. At that point, the road curves to the south on a 73-degree curve and begins to rise sharply on an 8% grade which continues to about 100 feet west of the place of accident. Claimants allege that as they neared this curve,

a car coming toward them forced Shaw to pull off on the north shoulder at a point about in the middle of the curve and that the soft, sandy composition of the shoulder prevented his return to the pavement in time to avert the collision.

The weight of evidence established that the Shaw car left the highway on the curve just west of the intersection which is about 200 feet easterly from the tree. It seems clear that the car traveled at a tangent, in the shoulder for about forty feet until it reached the junction of the shoulder with the back slope. The shoulder in this area was eight feet wide but gradually narrowed to about four feet further west and sloped approximately one inch to the foot. Because of this planned sloping and because of the rising terrain to the north, there existed a depressed sandy area about two feet wide and four inches deep immediately adjacent to the shoulder, which is referred to throughout the testimony as the drainage ditch. The right wheels of the car then followed this ditch straight upgrade for about 150 feet until the front wheel collided with the projecting portion of a large stone lying in the back part of the ditch about seven and one-half feet from the edge of the pavement. The car was then apparently swung around with great violence and crashed into a large maple tree which was standing about ten feet west of the stone and five feet nine inches from the macadam. The car ended up with its front end facing directly north, its right wheels in the air, and its top resting against the east side of the tree. It was necessary to lift the car away from the tree in order to remove the occupants. Marks between the rock and the tree indicate that the automobile must have been in the act of rolling over when it crashed against the tree. An examination of claimant's photograph, Exhibit 5, which purports to show the condition of the car immediately after the accident, clearly shows that tremendous force must have been applied to its center top and right side. Such a conclusion, also, tends to explain the relatively minor injuries to the driver and the very extensive injuries to Mrs. Shaw, who was sitting on the right side.

The evidence further establishes that there were two warning signs located about 500 feet east of the curve in question, namely, a "Slow" sign and a "Curve" warning sign. Claimant, Lewis E. Shaw, acknowledged that he was familiar with the road and saw the signs but made no attempt to apply his brakes or reduce his speed, although he admitted that he was traveling at an estimated speed of forty to forty-five miles per hour.

There is a sharp conflict in the evidence as to the composition of the north shoulder between the intersection and the tree.

Claimants' witnesses allege that it consisted largely of beach sand which sank eight to ten inches upon being driven or walked upon. The State's witnesses testified it was constructed of gravelly loam, and that the material used and the construction employed were in accordance with good engineering practice.

The duty resting on the State is that of exercising reasonable care under the circumstances. (See *Le Boeuf* v. *State of New York*, 281 N. Y. 737.) It may be held liable only for failure to exercise such care. (See *Tynan* v. *State of New York*, 157 Misc. 184, affd. 249 App. Div. 690.) It may only be charged with the duty of anticipating those consequences which, in the ordinary course of human experience, may reasonably be expected to happen. We think enough was shown to warrant a finding that the shoulder, at least at the point where Shaw's car left the macadam, was not in such a firm condition as to exonerate the State from all claim of negligence in the construction and maintenance of the shoulder. It might also be found, under other circumstances, that such a shoulder, together with the position of the tree and stone, in such proximity to the highway constituted an unreasonably dangerous situation for which the State would be liable. (See *Williams* v. *County of Saratoga*, 266 App. Div. 431, affd. 291 N. Y. 782, and *Russell* v. *State of New York*, 268 App. Div. 585.) When the State's '' negligence involves a failure by its properly delegated employees to exercise reasonable care to protect the users of State highways at points where danger is reasonably to be foreseen, the State's liability follows if the injury complained of is the proximate consequence of such neglect of duty.'' (*Van de Walker* v. *State of New York*, 253 App. Div. 226, 229, revd. 278 N. Y. 454.) '' Legal or proximate cause is always dependent upon the facts of a particular case ''. (*O'Neill* v. *City of Port Jervis*, 253 N. Y. 423, 433.)

From the weight of the credible testimony and the exhibits in evidence, we arrive at the conclusion that the negligence of the driver was the direct cause of the accident, entirely separate from any negligence on the part of the State. The accident would not have happened in the manner in which it did if Shaw had not been driving carelessly and at an excessive rate of speed. His indifference to the known highway, twisting sharp grades, and warning signs, and his failure to slacken speed in any appreciable degree at any time before the collision, are convincing evidence of his lack of due care. (See *Rafferty* v. *State of New York*, 261 App. Div. 80, and *Thompson* v. *State of New York*, 154 Misc. 707.) Even if he were forced off the

road at the point he designated, and even if the sand retarded his return to the pavement, it must be acknowledged that the same sand would have tended to abate the speed of his car proceeding on an 8% upgrade for approximately 200 feet. We are persuaded that the emergency was of his own creation and that there was no causal connection between any negligence of the State and the unfortunate injuries. (See *Sturman* v. *State of New York*, 269 N. Y. 627; *Ruggiero* v. *State of New York*, 256 App. Div. 437, and *Racht* v. *State of New York*, 14 N. Y. S. 2d 185.)

Although claimant, Jeanette V. Shaw, was not guilty of contributory negligence, and although the negligence of her husband is not imputable to her, the rule of causal connection must still apply. In order for a passenger to recover under circumstances such as these, the negligence of the State must be a proximate cause of the accident. Because we deem the related facts sufficient to predicate the finding that the sole cause of this accident was the negligence of Lewis E. Shaw, our conclusion is otherwise.

Let judgment be entered accordingly.