WILLIAM B. O'CONNOR, Claimant, *v.* STATE OF NEW YORK, Defendant. (Claim No. 29318.)

Court of Claims, July 17, 1950.

*Francis Barry Cantwell* and *Thomas Barry Cantwell* for claimant.

*Nathaniel L. Goldstein, Attorney-General* (*Burns F. Barford* and *Lawrence H. Wagner* of counsel), for defendant.

LOUNSBERRY, P. J.   At around 11:00 P.M. of a clear, dark night, on September 5, 1948, the claimant parked his 1940 Chrysler coupe on the north side of Railroad Street in the unincorporated village of Ausable Forks, directly in front of the Riverside Hotel, which was situate at the intersection of Railroad and McRea Streets.   The car stood on the dirt shoulder about a car length· east of the intersection, with its right wheels close to the sidewalk running along the front of the hotel property.   He went into the hotel for a few minutes and then returned to his car, both times walking around to the rear of the car.   Upon returning, he put the car in low gear, turned on his headlights, looked about for traffic and started forward.   After he had proceeded about one-car length, the car struck against an object which brought it to an abrupt stop, damaging the car and causing some injuries to the claimant.   The object subsequently proved to be a rust colored iron post, six inches or more in diameter, rising between eighteen and twenty-four inches above the ground and located eight or twelve inches outside the sidewalk, very close to the intersection.   The post had existed in this location for many years but served no useful purpose.

Railroad Street forms a part of New York State Highway No. 9N.   According to plans approved December 15, 1904, the State originally paved it with macadam to a width of fourteen feet in the area in front of the hotel.   Said plans indicated that the total width of roadway at such location at such time was twenty-four feet although they do not indicate any definite highway boundary.   Measurements made by the claimant shortly after the accident show that the macadam had subsequently been widened to about twenty-two and one-half feet.   Between the north edge thereof and the four-foot concrete sidewalk in front of the hotel was a dirt or gravel area about six and one-half feet wide, on which the claimant had parked his car.

While the post did not in any manner obstruct normal driving along the paved portion of the highway, it undoubtedly did constitute an obstruction to persons lawfully parking along the shoulder of the highway or lawfully driving upon said shoulder when occasion so required, or lawfully turning from Railroad Street into McRea Street.   In the daytime it was probably reasonably visible but at night, because of its dark color and relatively low height, it must have been virtually invisible and therefore dangerous to vehicles and pedestrians alike.

The only serious legal question, therefore, is whether or not the State was responsible for the continued existence of such obstruction.   No satisfactory evidence as to the location of the

highway boundary was presented. No statute establishes any presumptive width of State highways. Town roads, however, are presumed to be three rods wide (Highway Law, § 180). It is probably safe to assume that Railroad Street was originally a town road, which was subsequently taken over and improved by the State and if so, it would seem that the State thereby took over and became responsible for a three-rod road. The situation differs from that in an incorporated village where normally the State is responsible only for that portion of a village street which it actually paves and maintains (Highway Law, § 58), although, even in such cases, the State may not necessarily escape responsibility for conditions outside the paved area (see *Seelye* v. *State of New York,* 178 Misc. 278, affd. 267 App. Div. 941).

In the present case, it would appear that the total width of the highway from the north or inside edge of the sidewalk in front of the hotel property to the railroad track lying just south of the street, was about forty-one feet. Obviously, therefore, if Railroad Street was in fact a three-rod road, the iron post was well within the highway limits, assuming, of course, as seems reasonable, that the pavement lay approximately midway of the total roadway. Of course, if the width of the roadway was only twenty-four feet, as might possibly be assumed from the above-mentioned plans, the post would then be outside the highway limits, but in such case so would all but less than a foot of the dirt shoulder, which seems very unlikely. Normally, both the shoulder and the sidewalk are deemed part of the highway.

In any event, irrespective of the precise width of the highway, it has become well established that the State or municipality, as the case may be, is responsible for the maintenance of the highway shoulders in a reasonably safe condition for travel when the necessity for their use arises. (*LaRue* v. *Tiernan,* 260 App. Div. 337; *Russell* v. *State of New York,* 268 App. Div. 585; *Taylor* v. *State of New York,* 262 App. Div. 657, affd. 288 N. Y. 542; *Shaffer* v. *State of New York,* 256 App. Div. 1053; *Shaw* v. *State of New York,* 196 Misc. 792.)

In the *Russell* case (*supra*) the claimant, while negotiating a sharp turn, pulled over onto a soft shoulder to avoid an oncoming car and struck a telegraph pole ten and one-half feet from the edge of the pavement. While returning the case for a new trial, the court indicated that the State might be deemed liable for the condition of the shoulder, apparently including the location of a pole at such a point.

In the *Taylor* case (*supra*) the claimant was also forced onto the shoulder by an approaching vehicle. There was a drop of about six inches from the edge of the concrete which caused the car to swerve and overturn when it attempted to return to the pavement. The State was held liable on the ground that the shoulder was a part of the public highway and must be maintained in a reasonably safe condition.

In the *Shaffer* case (*supra*) the claimant also pulled over to avoid an oncoming vehicle and struck a ridge on the shoulder of the highway which had existed for some two months. Again the State was held liable. Likewise, in the *Shaw* case (*supra*) the claimant was forced onto a soft shoulder while rounding a sharp curve and struck a rock about seven and one-half feet from the edge of the pavement. The court indicated that the State was negligent in permitting such a condition to exist but denied recovery because of the negligence of the driver.

Not only is the State (or in a proper case, the municipality) responsible for the maintenance of the highway shoulder, but in some cases, it has been held responsible for conditions outside the highway which imperil traffic on the highway, such as a dangerous tree (*Julian* v. *State of New York,* 187 Misc. 146), a dangerous embankment from which rocks may slide (*Juliano* v. *State of New York,* 190 Misc. 180, affd. 273 App. Div. 936), a pole overhanging the highway (*Fisher* v. *City of Mt. Vernon,* 41 App. Div. 293); a water pipe projecting four inches above the ground in the unpaved area between the curbed area and the sidewalk (*Archer* v. *City of Mt. Vernon,* 57 App. Div. 32).

In *Sweet* v. *Perkins* (196 N. Y. 482) the defendant was found liable for leaving a pile of muck about four feet from the traveled portion of a country highway. The court stated (p. 486): " If the use results in such obstruction of, or danger to, the public right of user, it is a nuisance in the eye of the law. The whole of the highway, as laid out and appropriated, is for the public use, and it is immaterial that but a part of it has been worked by the authorities. The rule relating to encroachments on highways is not confined in its operation to the track beaten by travelers; it embraces all parts of the highway. (See *Tinker* v. *N. Y., O. & W. Ry. Co.,* 157 N. Y. 312; *Callanan* v. *Gilman,* 107 ib. 360; Wood's Law of Nuisances, sec. 248; Penal Code, sec. 385.) "

The case of *Graham* v. *Town of Urbana* (235 App. Div. 275) is indirectly significant. There, an accident resulted from the sliding of wet earth down a bank onto the pavement of a State highway. The plaintiff brought action against the town. The court held that a town is not liable for an obstruction of a State

highway except where such obstruction results from an accumulation of snow and ice, which at that time had to be removed by towns under section 53 of the Highway Law. The court, therefore, held in effect that the responsibility for such condition would rest upon the State. In the present case, the responsibility for the iron post could rest only on either the town or the State, and in the light of the *Graham* case (*supra*) the town is apparently eliminated.

On the basis of the foregoing, we have reached the conclusion that the iron post did constitute an obstruction of the State highway and that the State was negligent in not having the same removed or at least clearly marked in such a manner as to be visible. The State had adequate constructive notice of the condition from the fact of its obvious existence for many years. We do not find the claimant guilty of any contributory negligence in view of the fact that the accident occurred at night when the post was virtually invisible. The claimant's attention was necessarily directed to traffic conditions rather than to possible obscure obstructions in the highway shoulder.

Claimant's injuries consisted of a contusion of the left knee and a muscular or ligamentous injury on the right side of his neck. The latter was sufficiently painful and persistent so that claimant consulted three physicians and received novocaine injections. Heat and massage were also prescribed but claimant does not appear to have followed the prescription to any appreciable extent. Although he still complained of pain at the time of trial, there was no medical evidence that the injury had not healed, or that it would prove permanent.

Claimant's allowable medical expenses totaled $115, and the damage to his car $113.84. Adding to this an allowance of $1,000 for his personal injuries, we arrive at an award of $1,228.84.

Findings of fact and conclusions of law in accordance with the above opinion may be submitted within fifteen days from the date hereof, otherwise this memorandum will be considered the decision herein.

Let judgment be entered accordingly.