GEORGE C. LE ROUX, Appellant, *v.* STATE OF NEW YORK, Respondent. (Claim No. 31007.)

R. BERNADINE LE ROUX, Appellant, *v.* STATE OF NEW YORK, Respondent. (Claim No. 31008.)

Argued May 27, 1954; decided July 14, 1954.

*Arthur W. Agan* for appellants. I. There was substantial evidence to sustain the finding of the trial court that the appellants were invitees. (*Parry* v. *State of New York,* 193 Misc. 875; *Piche* v. *State of New York,* 202 Misc. 84; *Kittle* v. *State of New York,* 245 App. Div. 401.) II. The State had actual or constructive notice or knowledge of the existence of the well. III. The State made no inspection prior to the accident and took no precautions to guard the general public. IV. The well as it existed on the day of the accident constituted a dangerous condition. V. The State was negligent and such negligence was a proximate cause of the accident.

*Nathaniel L. Goldstein, Attorney-General (Henry S. Manley* and *Wendell P. Brown* of counsel), for respondent. I. The State was not negligent. II. Negligence of the claimants contributed to the accident.

Lewis, Ch. J. The claimant-appellant R. Bernadine Le Roux recovered a judgment in the Court of Claims for personal injuries sustained when she fell into an abandoned well located on property owned by the State of New York. Her husband was awarded damages in a separate derivative action for medical expenses and loss of services resulting from his wife's injuries.* The Appellate Division reversed the judgments, made new findings and dismissed both claims. The cases are here on appeals taken as of right by both claimants from the judgments entered upon the Appellate Division orders of reversal.

---

* In the statement of facts which follows, unless otherwise indicated, the term "claimant" will refer to the injured party, R. Bernadine Le Roux.

From the record before us it appears that for a period of at least twenty years prior to the accident which befell the claimant the State has owned and, through its Conservation Department, has maintained a tract of land of approximately 4,000 acres near the hamlet of Summerhill, in Cayuga County, used as a reforestation area and public hunting ground. The area is abandoned farm land upon which were formerly located farmhouses, barns and other incidental structures. A dirt highway, known as the Old Salt Road, extends from the hamlet of Summerhill northerly through the area. On either side of Old Salt Road are shrubbery and bushes — growth described by one witness as being " just natural growth that you find in places like that ". Along the side of the road are signs bearing the following legend:

" STATE
REFORESTATION
AREA

PLANTED WITH TREES TO PRODUCE TIMBER

BE CAREFUL
WITH FIRE

Conservation Department

PUBLIC HUNTING
GROUND

STATE OF NEW YORK
Conservation Department "

On July 25, 1951, the claimant, with her husband and four children, drove from their home in Homer, Cortland County, to nearby Summerhill, thence northerly on Old Salt Road to a point in the area where, after dismounting from their car, they walked into the brush and proceeded to pick berries. In doing so, the claimant, who had become separated a few feet from her husband, took a step forward and fell into an abandoned well, sixteen feet deep, striking an upright metal pipe lodged in the

bottom course of the well. In the well was stagnant water in which claimant was immersed up to her shoulders when she had regained her footing.

It will become important to our decision to note that the well opening — so covered by brush that claimant had not seen it before her fall — was two and one-half to three feet in diameter at ground level, located about forty feet east of the center line of Old Salt Road and only about twenty feet from the foundation walls of a demolished farmhouse. Also of importance is the fact, shown by a survey made by the State's witness Meylan, that one of the signs, bearing the legend quoted above, was fastened to a tree which was seventy-one feet northerly from the well.

The roster of Conservation Department employees assigned to the area include the district forester in charge, under whom is a forester who has supervision over twenty-five laborers; also a district ranger under whom are two " managers ".

James D. Kennedy, the district forester in charge of the area, called as a witness for the State, testified that the area, which is open to the public for hunting, has been a " very popular hunting place for people miles and miles away ", and that, although it is not formally a recreation park, those in charge have never objected to people picking berries on the preserve. Kennedy could not recall having seen the building foundations near the open well here involved prior to the filing of the claims herein. He knew, however, that the preserve comprised abandoned farm lands which had been occupied formerly by farmhouses, barns and incidental buildings, and he had learned from his experience there that, on property of that kind, wells are generally located in reasonably close proximity to the site of former buildings. Despite such knowledge by the district forester in charge of the area for the State, he testified that, as to precautions taken against the presence of abandoned wells, " We have never made a systematic inspection [to find old wells on old abandoned farms], but we have had a standing verbal order for a great number of years with the employees under me that any old wells which we found were to be filled immediately ". It also appears that hunters were asked to report any hazards which they may find on the area.

The State's witness Meylan, a district ranger working at the area, testified that — prior to the date of claimant's accident in July, 1951 — he and a group of laborers had worked near the site of the well into which claimant fell and that he had then observed the foundations of a house near the place where claimant was injured.

On the foregoing evidence, the Court of Claims made findings as follows:

" The Court finds that on July 25th, 1951 claimants were invitees on the State Reforestation Preserve; that as such the State of New York owed them the duty of reasonable care; that the State knew that this Preserve was composed of abandoned farmlands and buildings, and should have anticipated the presence of wells of this sort in the vicinity and in this area, and that the well as it existed on the day of the accident constituted a dangerous condition. The State should have made a reasonable inspection of the area or taken other adequate protective measures. The State made no inspection prior to the accident and took no precautions to guard the general public.

" The Court finds that the State of New York was negligent and that such negligence was a proximate cause of the accident. The claimants were not negligent.''

At the Appellate Division, the orders reversing the judgments for claimants entered in the Court of Claims, stated in part: " It is hereby ORDERED, That the findings of fact contained in the decision to the effect that claimants were invitees; that the State should have anticipated the presence of wells in this area and should have made a reasonable inspection of the area or taken other adequate protective measures; that the State made no inspection prior to the accident and took no precautions to guard the general public; that the well as it existed on the day of the accident constituted a dangerous condition; that the State was negligent and that such negligence was a proximate cause of the accident be, and the same hereby are disapproved and reversed.''

The Appellate Division also made the following new findings of fact and a single new conclusion of law: " 1. Claimants were licensees on the State reforestation preserve. 2. The State had no actual or constructive notice or knowledge of the existence of the well. 3. There was no negligence upon the part of the

State which could be the proximate cause of the accident. * * * The State of New York is entitled to judgment dismissing the claim herein.''

In support of its decision that claimants were licensees upon the property and the State's duty toward them was to abstain from inflicting intentional or willful injury and from creating snares or traps, the Appellate Division cited *Carbone* v. *Mackchil Realty Corp.* (296 N. Y. 154). We regard the facts upon which was based our decision in the *Carbone* case as being substantially different from those now before us. There the infant plaintiffs were injured while playing on undermined foundation walls located on defendants' *private* property at a site *more than 150 feet from the public street*. While there was evidence that children had played at or near the foundations prior to the accident, there was also proof that defendants' employees had repeatedly '' chased '' children away from the area. In concluding that plaintiffs were not invitees to whom defendants owed a duty to make safe the foundation walls, '' far removed from lanes of public travel '' (*supra,* p. 160), we said (p. 158): '' When the three infant plaintiffs came upon defendants' property they were uninvited. Motivated as they were by their own curiosity, or by a desire for amusement in no way connected with business or other relations with the defendants, it cannot be said that the defendants' failure in this instance to prohibit their instrusion was in any sense an invitation. Giving to the infant plaintiffs every favorable inference which may be had from the evidence they were at most bare licensees.''

The distinction between the status of the plaintiffs in the *Carbone* case (*supra*) and that of the present claimants is apparent. Our present record makes clear the fact that, unlike *Carbone,* the property upon which claimant was injured was specifically maintained for public purposes and for public use. Signs posted along the Old Salt Road and observed by claimant — one of which was near the abandoned open well — described the premises as a '' Public Hunting Ground '' and carried the warning '' Be Careful With Fire '' as a precaution against the careless destruction of the woodlands by members of the public entering thereon. The State forester in charge of the preserve testified that the area was open to the public; that '' for some years '' many people had been accustomed to hunt in the preserve, and

that he and those under his supervision had never objected to people picking berries at that location.

In view of the foregoing proof we think it may not be said that claimant's status was comparable to that of the infant plaintiffs in the *Carbone* case (*supra*) — viz., bare licensees to whom the landowner owed no duty other than to refrain from willful or wanton injury. In the case at hand claimant and her family had entered upon the preserve with knowledge gained from signs which bore the legend " Public Hunting Ground ". They thus became entitled to expect that the State, as owner and maintainer of land for public use, would exercise reasonable care to prevent, or to warn against, dangers to claimant and others coming upon the land which the State's agents knew, or should have known, existed. " When we seek to determine whether or not ordinary care has been exercised the test is the foreseeability of the risk." (*People* v. *Sandgren,* 302 N. Y. 331; 339; *Palsgraf* v. *Long Is. R. R. Co.,* 248 N. Y. 339, 344–345; *O'Neill* v. *City of Port Jervis,* 253 N. Y. 423, 434.) Applying that test to the undisputed facts now of record before us, we note that, despite knowledge by the district forester in charge, that the area here involved had formerly been occupied by farm buildings and that wells are generally to be found near such structures; and despite knowledge by the forest ranger — an assistant to the district forester — of the prior existence of a farmhouse, the foundations of which still stood twenty feet from the well in which claimant was injured, nothing had ever been done by the State's agents either to discover any abandoned well which might reasonably have been anticipated on the premises or to warn persons coming onto the preserve of the probable existence of such a hazard. Here the State's agents knew that an open, unmarked, abandoned well constituted potential danger to those who came upon the preserve at the invitation, and with the consent, of the State. Failure to take precautionary measures either to discover and eliminate any open wells or to give adequate warning to the public generally of their probable existence, was a breach of the State's duty to protect persons coming rightfully on the premises from danger reasonably to be foreseen.

That the existence of abandoned wells is a source of danger has been recognized by the Legislature through its enactment

in 1950 of section 1904-a of the Penal Law. That section provides:

*"Abandoned wells or cesspools.* Any person, firm or corporation owning or being in possession of land upon which there is located an abandoned well or cesspool must cover the same with suitable protective construction. Whoever omits to comply with this section is guilty of a misdemeanor.'' (L. 1950, ch. 397.) The foregoing provision has been made applicable to the State by section 37 of the General Construction Law, which provides in part that: '' When used to designate a party whose property may be the subject of any offense, the term person also includes the state, or any other state, government or country which may lawfully own the property in the state.''

As to that argument it is said in behalf of the State that, in the circumstances of the present case, no violation of section 1904-a of the Penal Law has occurred because, '' In penal legislation, making a person guilty if he does something or unless he does something, the word ' *knowingly* ' is implied '', and that here the State did not have actual knowledge of the existence of the well in which claimant was injured. We regard that argument as irrelevant in the present civil litigation where we are not concerned with a criminal prosecution under section 1904-a of the Penal Law; nor is it necessary to decide whether defendant is chargeable with that degree of knowledge sufficient to sustain a criminal conviction. The significance of section 1904-a *id.* is that it points up the danger which exists from unmarked, unprotected abandoned wells — dangers the Legislature apparently regarded as public hazards which, as a matter of public policy, warranted penal legislation to compel their elimination.

The State's final point relates to alleged contributory negligence of the claimants which — it is asserted — bars their recovery in the present action. Upon that subject, however, the Court of Claims found that '' The claimants were not negligent.'' That finding of fact was not reversed by the Appellate Division and, accordingly, being supported by substantial evidence of record, it is conclusive in this court. (*Harrington* v. *Harrington,* 290 N. Y. 126, 130; *Aerated Products Co.* v. *Godfrey,* 290 N. Y. 92, 95; Cohen and Karger, Powers of the New York Court of Appeals, pp. 477–478.)

As to findings of fact reversed by the Appellate Division and the new findings made, we think the weight of evidence supports the findings of the Court of Claims.

Accordingly, the judgments entered upon the orders of the Appellate Division should be reversed, and the judgments of the Court of Claims reinstated, with costs in this court and in the Appellate Division.

DYE, J. (dissenting). I dissent and vote to affirm.

There is nothing to show that the State knew or should have known of the existence of the old well and its potential danger to others. The lands in question, a tract of about 4,000 acres, formed part of the 65,000-acre State reforestation area spread over six counties. It was planted to forest trees and was not designed or intended for public recreational purposes. True, hunting was permitted during the fall season and, so far as this record shows, no one had ever been put off for going into the area for other purposes. This, however, is not enough to give the claimants the status of an invitee. At the very most, they were licensees to whom the State owed no duty other than to refrain from inflicting willful or intentional harm and the creation of snares and traps (Restatement, Torts, § 342). The State was under no duty to these claimants to inspect and warn. They were there on a personal errand, the picking of berries, and, according to Mrs. Le Roux, at a place about twenty feet from the path she pushed and forced her way through bushes " above my waist " three or four feet high. She observed nothing, was feeling her way through when she fell. Those circumstances tend to emphasize the unwarranted extent to which the claimant would have us push the role of liability by a reversal here. As the case comes to us the issue of contributory negligence is not open — and it need not be to affirm — since, on this record, the weight of evidence as to negligence in the first instance preponderates in favor of the State.

The judgments should be affirmed, with costs.

CONWAY, DESMOND, FULD and FROESSEL, JJ., concur with LEWIS, Ch. J.; DYE, J., dissents in opinion in which VAN VOORHIS, J., concurs.

Judgments reversed, etc.