Richard S. Heller, J.
These six claims arose out of the same automobile accident and were tried together.
On July 30, 1954 between eight-fifteen and eight-thirty in the evening claimant Robert Van Tuyl left his home in Jamesville, New York, in his 1942 Packard four-door sedan with his wife, three children and his nephew, intending to go to a drive-in theatre. In the course of this trip the claimant Robert Van Tuyl drove north on a State highway known as Route 173 over which he had never before driven.
This State highway was originally constructed by Onondaga County between 1917 and 1921 and sometime thereafter became a State highway. Proceeding northerly on Route 173 the highway goes up a slight grade followed by a downgrade commencing immediately before a curve to the left and descending 13.5 feet around a 200-foot curve. Around this curve the pavement was an 18-foot strip of macadam. It had a center crown so that the easterly edge or right-hand side of the highway when proceeding in a northerly direction, was from 3 to Sy2 inches lower than the center of the highway.
Around the curve there was a shoulder on the right-hand side which varied from 2y2 to 3 feet in width and which had some gravel and loose stone on it and was in places slightly below the level of the macadam pavement. The edge of the macadam pavement had been broken and patched but there was no evidence of any holes existing in the paved surface.
About 450 feet south of the south end of this curve there was a nonreflectorized sign bearing the words “"WARNING-CURVE ’ ’ with an arrow indicating a curve to the left. This sign was below the crest of the upgrade south of the curve. About 114 feet south of the beginning of the curve was a paint control post. Preceding the curve sign and extending to this paint control post, there was a solid white line on the easterly side of the center of the highway and a broken white line on the westerly side of the center of the highway. Commencing at this paint control post and extending completely around the curve there were two solid white lines in the center of the highway.
*75 Ninety-eight feet north of the south end of the curve and 12.3 feet to the east of the pavement was a gatepost marking the south edge of a driveway extending easterly from the highway. Thirty-three feet further north was another gatepost marking the north edge of the driveway and this gatepost was 13 feet east of the pavement. Eighteen and one-half feet north of the northerly gatepost and 40% feet south of the north end of the curve was an anchor pole.
North of the northerly gatepost the ground to the east of the 2% to 3-foot shoulder dropped off sharply. The road was quite heavily shrubbed and wooded on each side around the curve.
The claimant Van Tuyl testified that he was operating his automobile at about 40 to 45 miles per hour as he reached this curve. He failed to see the sign warning of a curve to the left some 400 feet south of the south end of the curve. He was operating his automobile on the pavement on the right-hand side of the road. He failed to see the double white line in the center of the road as it followed the curve to the left.
He first became aware that he was coming into a curve when he saw one of the gateposts of the driveway some 50 feet ahead of him. By the time he arrived at the driveway all he could see ahead of him was a wooded area and he realized that there was a curve. Up to that time he had not done anything to slow down his automobile and was still on the paved portion of the highway.
By the time he reached the gatepost marking the driveway he tried to turn the car to the left but could 11 feel something pulling off to the right ”. The motor vehicle went on to the shoulder of the road and apparently continued on the shoulder and at an increasing tangent to the road striking the pole 18% feet north of the northerly gatepost and 7% feet east of the east edge of the pavement and another pole 49% feet further north 12.4 feet to the east of the pavement and then went down an embankment into a heavily shrubbed and wooded area. It was a clear night and the visibility was good. The pavement was dry. The claimant Van Tuyl testified that he did not apply his brakes or in any way attempt to reduce his speed until after the car had left the pavement. Shortly after the accident occurred the claimant Van Tuyl made a statement indicating that he lost control of the automobile when he felt a bump at the front of his car and the steering wheel started to shake back and forth and that the foot accelerator stuck so that he got onto the right-hand shoulder of the road, lost control of the car and struck two poles and a tree.
*76 There was testimony establishing that the shoulders on Route 173 were low in places and generally narrow. Complaints relating to the difficulty of controlling a motor vehicle around this curve with its descending grade to the left and pavement sloping to the right had been made to the Department of Public Works. An engineer experienced in the highway construction practice testified on behalf of the claimant that in his opinion the effective speed limit of 50 miles per hour was not safe for this curve.
While the evidence of the condition of this highway and the shoulders and the lack of adequate warning signs is sufficient to establish negligence on the part of the State, the weight of the credible evidence requires a dismissal of these claims. Liability of the State can exist only where its negligence is the proximate cause of the injury. (Shaw v. State of New York, 196 Misc. 792, affd. 278 App. Div. 871, affd. 303 N. Y. 644.) The driver of this motor vehicle was necessarily aware of the fact that he was traveling a highway constructed many years ago. His failure to observe the warning curve sign and his failure to reduce his speed at any time prior to leaving the pavement under the conditions which were readily visible are convincing evidence of his lack of due care. The court finds that the proximate cause of this accident was not the negligence of the State but the failure of the driver to operate and keep his car under control as required of a prudent person under similar circumstances. (Kleinmann v. State of New York, 207 Misc. 590; Racht v. State of New York, 14 N. Y. S. 2d 185.)
While the negligence of the driver of the motor vehicle is not imputable to the passengers in the car, nevertheless the claims of the passengers must be dismissed inasmuch as the sole proximate cause of the injuries was the negligence of the driver of the motor vehicle and not the negligence of the State.
The motions for dismissal made at the conclusion of the trial by the Attorney-General are granted.
Let judgments be entered accordingly.