GAETANA TOMASETTI, as Executrix of PASQUALE TOMASETTI, JR., Deceased, Claimant, *v.* STATE OF NEW YORK, Defendant. (Claim No. 30673.)

Court of Claims, December 22, 1952.

*Robert Hyman* and *Jerome Goldenbock* for claimant.

*Nathaniel L. Goldstein, Attorney-General (David Marcus* of counsel), for defendant.

SYLVESTER, J. On August 16, 1950, at approximately 10:00 P.M., Pasquale Tomasetti met his death when his automobile left State Highway 109, Town of Babylon, collided with a concrete catch basin located in the shoulder of the road, and crashed into a crossboard to which mail boxes were affixed. The car then veered to the left several hundred feet into the center mall of Route 109, where it overturned. The decedent was then returning from Travers Island where he had been attending an outing, given by a roadbuilders organization, and where he had spent the major portion of the day. Unaccompanied, he left Travers Island at 8:30 P.M. or thereabouts, on his way to his summer

residence at Babylon. There is no account as to what ensued immediately prior to the crash, except for testimony of a controversial complexion concerning the tire tracks of the car, which were at least discernible for about 100 feet, marking the path of the vehicle on the shoulder of the road as it proceeded to the catch basin. No eyewitness to the accident was produced, and no valid cause or reason appears for the decedent's departure from the traveled portion of the highway. The weather was clear and dry, and the road wide and unobstructed. The highway, comparatively new and modern, was twenty-four feet wide in each direction and was separated by a thirty-foot wide mall in the center. Though there were some curves on the roadway, they were not of such character or nature as to require signing. Admittedly, the decedent was fully acquainted with this highway, having traversed it frequently.

It is uncontradicted that the entire shoulder, including the back slope and the scrub oak, is illuminable by the headlights of an automobile for a distance of approximately two hundred feet from the catch basin; that the headlights could clearly show the extremities of the pavement and the beginning of the grass shoulder; that the high beams of the lights would have illuminated the catch basin and the mail boxes from a point four hundred feet west thereof, and the low beams from one hundred and fifty to two hundred feet west thereof.

The hole or depression, which it is claimed existed on the shoulder and into which it is said the car entered causing it to veer into the catch basin, was variously described as to dimension and location. Two local policemen, who closely examined the area immediately after the accident, made no mention of this supposed hole in any of their reports of the accident, nor was any mention made of it by the one who testified at the coroner's inquest, despite the fact that it was their function to determine the cause of the accident. In the light of the overwhelming and more convincing proof, the court is of the opinion that the depression, if indeed it existed, was of such a character as not to have caused a loss of control of the car. Moreover, even if it be assumed that the described hole or depression really existed, as some of claimant's witnesses would have the court believe, it nevertheless amply appears that, in the exercise of prudent driving, the decedent could have easily avoided it.

The discernible tire marks on the shoulder to the " disputed " depression, which was claimed to be located at Fifth Street

(a dirt road leading off Route 109), were straight and practically parallel with the paved road, and about seventy-five feet in length. It is evident that the car was off the concrete some distance west of a point seventy-five feet of the depression, since at that point the right tire mark was three or four feet from the paved portion. The testimony of both the claimant's and the State's witnesses established that the shoulder, within eight feet of the paved portion of the road and within the path of the vehicle, was in good condition. It, therefore, seems that the driver could have regained the paved portion of the highway without difficulty if he had only made the attempt, for in the exercise of ordinary caution, he should have realized he was off the road. Whatever the reason for his failure so to do remains unknown and, at best, is open to mere speculation. He might have dozed at the wheel. It was a warm day at the outing where he had participated in athletic activities and had consumed much beer. The cause of this accident rests entirely upon circumstantial proof which, of course, in given situations, may support a judgment; but it is required that "inferences of negligence and proximate cause must be the only ones that can fairly and reasonably be deduced from the facts." (*Boyce Motor Lines* v. *State of New York*, 280 App. Div. 693, 696; *Ruppert* v. *Brooklyn Heights R. R. Co.*, 154 N. Y. 90; *Inglese* v. *New York, N. H. & H. R. R. Co.*, 133 App. Div. 198.) The evidence here does not permit of such inferences. Rather, it is fairly apparent from all the circumstances that the driver's misfortune was caused by his own negligence. The motion to dismiss the claim is therefore granted and the clerk is directed to enter judgment accordingly.

Findings may be submitted within ten days from the date hereof; otherwise this memorandum shall constitute the decision of the court.