Alexander Del Giorno, J.
This is a claim to recover damages for personal injuries sustained by the four claimants and for property damage to the motor vehicle owned by claimants Mittenberg and Galperin, as a result of the alleged negligence of the State.
On the trial, an order was made on motion amending the claim as to claimant Hyman Portnoy, so as to make him a claimant in his name in an individual capacity, since he had attained his majority subsequent to the filing of the claim. Further, in view of the fact that claimant Mittenberg was not available on the trial, both sides agreed, and the court so ordered, that the claim of Mittenberg as to personal injuries be dismissed.
Claimants Mittenberg and Galperin were the owners of a 1949 Oldsmobile Sedan which was being operated by claimant Ludmerer on June 26, 1955. Galperin was in the front seat alongside Ludmerer, Portnoy was seated in the left rear and Mittenberg in the right rear.
At about 7:00 p.m., on that day, the automobile was proceeding to Montieello, in a southerly direction on Route 42. When it reached a point on Route 42 about one-half mile south of Kiamesha, at which location there is a left curve on the roadway, the car swerved and the driver applied his brakes and skidded, the car leaving the roadway, knocking down a stanchion and coming to rest in a ditch farther ahead. At the point where the left curve occurs, there is a side dirt road, which meets to the right of but does not cross Route 42.
*514 Claimant Portnoy testified that immediately before the accident, he heard the sound of pebbles and sand striking against the car, and that after the accident, when he was in a position half in and half out of the car, he saw on Route 42 sand and small stones extending two to three feet onto Route 42. This came from the dirt road which he said was at a higher level. Two weeks before the accident, he had been walking along the road and claims to have seen this same condition at that time. On cross-examination, he testified that there was a tire mark on the dirt over the paved portion of Route 42; that there was dirt thick enough to cover the paved portion, although he could not state the thickness thereof.
Claimant Ludmerer, the driver of the car, testified that at the left turn, where the road veers sharply, he felt the car swerve, applied the brake and skidded. At that time, he claimed, his speed was about 30 miles per hour. On cross-examination, he stated that he had driven on Route 42 during one or two week ends in May and each preceding week end in June, 1955, and that he was fully familiar with the road; that he saw the double white line on Route 42 when he was going around the curve; that neither the front right nor the rear right wheel went into the shoulder of the road. Before the car skidded, he did not see anything on the road, nor indeed did he take notice of the road. He spoke to a State Trooper at the hospital, and told him there was sand on the road. He denied, however, that at the same time he had told the trooper he was going too fast to make the curve. After the skidding the car went ahead in a straight line with the paved Route 42 before the curve started, knocking down a road stanchion, the car overturning and landing in a ditch some 30 feet past the curve. In his accident report claimant stated: “ Car #1 proceeding on Route 42 traveling from Kiamesha to Monticello. Car made wide turn on curve in road caused rear wheel to strike soft shoulder. Car skidded into stakes on side of road. Car turned over out of control. No warning signs.”
Claimant Galperin was dozing in the front seat and could not testify as to the manner in which the accident happened.
Elmer R. Winterberger, an assistant civil engineer employed by the State, called as a witness for claimants, testified that he works on safety; that he is familiar with Route 42 and the scene of the accident; that he inspected this road every two and one-half to five months; that a “ pile ” of dirt would be a hazard, but not the mere presence of some dirt; that when the surface of the road is dry, sand 6 to 10 inches high would be a hazard; that the existence of a hazardous condition would be *515 dependent on all the circumstances and that the fact that a road was straight or curved would have no bearing; that the curve involved here is “ reasonably sharp ”; that the side road running into Route 42 slopes down 5 or 6 feet but then goes up and is the same level as Route 42 at the intersection; that cars coming into Route 42 from the side road would not bring down sand and gravel on the pavement of Route 42. He stated that when he made his inspections, he saw no dirt.
Mr. Winterberger testified that there had been other accidents in this general location, and recounted the circumstances thereof from his records which circumstances indicated altogether different conditions. The State moved to strike this testimony from the record upon the ground that the conditions prevailing when those accidents occurred were not the same as the conditions existing at the time of this accident. Decision on this motion was reserved.
Claimant then rested, and the State moved to dismiss on the grounds that claimant had not presented a prima facie case, that the State had neither actual nor constructive notice of the conditions of the road; that the negligence of the driver is imputable to the owner; the State further moved for dismissal of the property damage claim of Mittenberg on all of these grounds. Decision thereon was reserved.
On behalf of the State, Michael J. Mahoney, State Trooper, testified that on the date of the accident, he was patrolling Route 42 from Monticello to Woodburn from 12 noon to 8:00 p.m., that he patrolled the area in question three or four times, and saw no sand or gravel in the road before the occurrence of the accident. He arrived at the scene at 7:30 p.m;., having received a call, and, finding claimants had gone to the hospital, went there. He testified further that Ludmerer said to him: “I guess I was going too fast for the turn”, and that he made an official report. The report he made, however, does not indicate affirmatively, in the appropriate box to be marked, that such was the case, the box being unmarked. On cross-examination, he stated that the car was at rest about 100 feet from the side road. While he was at the scene of the accident, he stood at the intersection in order to assist the tow truck, and saw nothing on the macadam road. The guard posts had been struck by the car. He testified further that there was a Reverse Curve sign to the north of the curve, and two large arrows just north of the side road which indicated a left turn, which could be seen from 500 to 1,000 feet north of the side road. The Reverse Curve sign indicated a speed of 35 miles per hour, and was about 200 to 300 feet north of the side road. He looked for but did not find *516 any skid or tire marks on the road. He did see the marks on the dirt where the car left the road. Although his report indicates the curve was sharp, he testified that it was a sweeping curve, 300 feet long and that the road is 22 feet wide.
State’s witness, Robert Miller, a manager of an auto sales company and a photographer, testified that on the day of the accident, between 7:30 p.m. and 8:00 p.m., he took photographs of the automobile after the accident. He testified that he walked from his own car where he had parked it to a point 50 to 60 feet north of the side road. At the intersection he saw no foreign matter on the paved road. On cross-examination, he testified that he had proceeded to this spot to take pictures of tire marks, but that there were none.
Pursuant to an order of compromise a general release was executed by Pearl Portnoy, mother of claimant Hyman Portnoy, on July 3,1956, running to claimants Galperin, Mittenberg and Ludmerer, for a consideration of $750; a general release was executed by claimants Galperin running to Mittenberg and Ludmerer on August 2, 1956, for a consideration of $700.
After the State rested, claimants read into the record part of the examination before trial of Floyd W. Culligan, a highway general maintenance foreman. He had testified that he inspected Route 42 several days before the accident. He further stated that his duties would require his clearing the road if there were any sand, dirt or debris on it. The State read into the record question 17 on page 2 of this examination, in which the witness testified that he saw nothing with respect to the area on Route 42 immediately before the side road and immediately past the side road.
Claimants Portnoy, Galperin and Ludmerer suffered personal injuries; those of Portnoy were testified to by Dr. Levine and are contained in his medical certificate and the hospital record; those of Galperin were testified to by the doctor and are contained in his medical certificate and the hospital record.
Both sides then rested, and the State renewed its motions for dismissal of the entire ease, on which decision was reserved.
These claims are based upon the alleged negligence of the State in allowing dirt, sand or stones to accumulate upon the highway, causing a slippery and dangerous condition which caused the automobile to skid from the highway.
Claimant Portnoy, who was sitting in the rear seat behind the driver, actually was the only one of the claimants who testified as to the presence of sand, dirt or stones on the road. He claimed to have heard the sound of pebbles and sand striking against the car, before the accident, and to have seen sand and *517 small stones on Route 42 afterward. The driver Ludmerer saw nothing on the road, took no notice of the road. Galperin, in the front with Ludmerer, was asleep and did not know what happened.
Claimants’ witness, Winterberger, a State safety engineer, who inspected the road regularly, saw no dirt on Route 42 at the time of his inspections. The examination before trial of Culligan, a State highway general maintenance foreman, indicated that he had seen no sand, dirt or debris on Route 42 at the time of his inspection several days prior to the accident.
State’s witnesses Mahoney, a State Trooper, and Miller, a photographer, both of whom inspected the road shortly after the occurrence, saw nothing on the road.
At the time the accident occurred, it was daylight, the weather was clear and the pavement was dry. There was no traffic congestion on the road and there were no breaks or holes in the southbound lane of Route 42.
There was a Reverse Curve sign to the north of the curve, about 200 to 300 feet from the side road, and a speed of 35 miles per hour was indicated thereon. Further, just north of the side road, there was an arrow sign, indicating a left turn, which was visible from a distance of not less than 500 feet.
The photograph of the scene of the accident shows the side road to be level with Route 42. No dirt, sand or stones are apparent, nor does any condition appear which might result in the precipitation of sand, dirt or stones from the side road onto Route 42. The accident report made by the driver Ludmerer seems to belie the filed claim in that in the report he attributes the accident to his having made a wide turn on the curve, causing the rear wheel to strike the shoulder, and does not attribute the skidding to the presence of sand, dirt or stones upon Route 42.
The court finds that the accident was not caused by sand, dirt or stones lying upon Route 42, and that the State is entirely free from negligence. The State maintained the road in proper condition and gave sufficient warning to claimants of any potential danger that might exist at the scene of the accident.
Under all of the circumstances the court finds also that if the driver had been proceeding at a speed of 30 miles per hour, he would have been able to keep his car under control at the curve, whereas in fact he lost control after it left the pavement. Further, even assuming that there was sand, dirt or stones on Route 42 in sufficient quantity to have caused the accident, the driver could easily have avoided it in the exercise of prudent driving.
*518 The alleged condition of the road therefore cannot be considered a proximate cause of the accident since no other independent proof was offered as to why the automobile came to rest in the ditch. (Tomasetti v. State of New York, 203 Misc. 297, affd. 283 App. Div. 837, motion for leave to appeal denied 307 N. Y. 702; Harford v. State of New York, 19 Misc 2d 7.)
Upon the testimony adduced, the court finds that the accident was caused by the negligence of the driver.
The motion made by the State to strike from the record the testimony of the witness Winterberger as to the occurrence of other accidents in the location, upon the ground that the conditions prevailing when those accidents occurred were not the same as the conditions existing at the time of this accident, is granted.
The claim of Irving Mittenberg for personal injuries is dismissed upon stipulation of his attorney and the Attorney-General ; the claims of Irving Mittenberg and Theodore Galperin for property damage are dismissed; the claims of Hyman Portnoy, Theodore Galperin and Sheldon Ludmerer for personal injuries are dismissed; the claim of Pearl Portnoy for medical expenses and loss of services is dismissed.
This constitutes the decision of the court in accordance with the provisions of section 440 of the Civil Practice Act. Let judgment be entered accordingly.