WILSON *vs.* THE PRESIDENT, DIRECTORS AND COMPANY OF THE SUSQUEHANNAH TURNPIKE ROAD.

Where there is a failure on the part of a turnpike company to comply with an express requirement of the statute, either as to the width of the road, or the mode of its construction, and a person traveling over it sustains an injury in consequence of such omission, the turnpike company is liable, unless it appears that the plaintiff could have avoided the injury by the exercise of ordinary care and prudence.

In such case there is no question involved, of a want of skill or care on the part of the defendant; but the omission to comply with the statutory requirement is a nuisance, for which a party injured, without negligence on his part, may claim damages.

Wilson *v.* Susquehannah Turnpike Road Co.

But if the injury to the plaintiff is not chargeable to any omission of the turn-
pike company to construct or maintain the road as required by law; or if
fault, or want of care on the part of the plaintiff, contributed to the injury,
an action will not lie.

Thus where it appeared that the plaintiff was traveling on the defendants' road
in a one-horse wagon, driven by another person, and that while descending a
hill, at a place where the road was less than the usual width, a trace became
unfastened and the horse started upon a gallop, and to avoid the apparent
peril of going down a deep and dangerous bank, the plaintiff leaped from the
wagon, and received a serious injury by his fall, *it was held* that the turnpike
company was not liable for the damages thus occasioned; it appearing from
the evidence that the wagon was not overturned, and that in all probability no
injury would have occurred, had the plaintiff remained in the wagon.

MOTION by the defendants, for a new trial, upon excep-
tions taken at the circtit. The complaint alleged that the
defendants, on the 1st of October, 1851, were a corporation, and
possessed of a turnpike road at Durham, Greene county, which
it was bound to keep in good repair. That the plaintiff, on the
day and at the place aforesaid, was lawfully traveling on said road,
in a one-horse wagon driven by another person, and the road was
out of repair by reason of the negligence of the defendants.
The defendants were bound to keep at least twenty feet of said
road bedded with wood, stone, gravel, or other hard substance,
so as to secure a solid foundation. That it was not so kept, but
by reason of the defendants' negligence, was less than twenty
feet wide, and the ditch on the south side of the turnpike was
wrongfully suffered to be filled up with stones, and was full of
holes and dangerous places. That while traveling along, one
of the traces became loosened, and the horse startled and was
drawing near an unsafe place in the ditch on the south side of
the road, and to prevent the horse from going into such unsafe
place, the driver drew him suddenly to the opposite side of the
road. That on the opposite side was a deep and dangerous
bank, and there were no fenders to prevent said horse from run-
ning down the bank. That there was great peril to the plain-
tiff in remaining in the wagon, and he jumped out and fell
among the loose stones in the ditch on the south side of the
road, and broke his leg. The answer was a general denial, and

an averment of the negligence of the plaintiff and the person. driving him, and that the wagon and harness were defective and unsafe. The cause was tried before Justice HARRIS, at the Greene circuit, in May, 1854. The plaintiff gave in evidence, the act incorporating the defendants, passed April 1st, 1800, and amended March 20, 1804. By a section thereof, the defendants were required to lay out a road at least four, and not more than six rods wide, twenty feet of which should be bedded with wood, stone, gravel, or any hard substance compacted together, with sufficient depth to secure a solid foundation to the same, and said road should be faced with gravel or other hard substance in such a manner as to secure as near as the materials would admit, an even surface, rising towards the middle by a gradual arch ; and they were required to keep the road in good order during the continuance of the charter. The plaintiff proved, that he received the injury on the 1st of October, 1851, at about dark, or 7 o'clock in the evening. The horse and wagon belonged to one Dickinson, who was driving it. A trace unhitched in descending the hill, and the horse " seemed to squat down on the near side thill and jump along pretty sharp," until near a water bar. At this point Dickinson turned the horse, as he crowded the south bank of the road, and he had as much as he could do to keep him out of the ditch on that side. At this point he hauled the horse suddenly, quartering of the road ; at that moment the plaintiff jumped from the wagon and alighted in the ditch and was injured. At the time the plaintiff leaped from the wagon, the horse was on a gallop but not a fast one, and he had been on a gallop all the way after the trace unhitched. There were no fenders to the road. The wagon did not turn over, nor get off into either ditch ; the horse did not run, and was manageable ; Dickinson staid in the wagon and was not hurt ; and if the plaintiff had staid in he would not have been hurt. There was no other evidence in the case as to how the injury occurred. There was no evidence that the road at that point was out of repair. The road bed at the point of injury was less than twenty feet wide, being about eighteen feet wide. On the south side of the road at this point

into which the plaintiff jumped was a ditch, filled with loose stones. On the north side, the bed of the road was higher than the bank, some ten or twelve feet. There was plenty of room for two teams to pass, at this point. The defendants moved for a non-suit, which was denied. The court charged that the defendants were bound to erect fenders at the point of injury, if the road without them was dangerous. Also that whether the plaintiff was drunk or sober at the time of the accident, was immaterial. The jury found a verdict for the plaintiff for $1500, and the defendants moved ·for a new trial.

*J. H. Reynolds,* for the defendants. I. To maintain the action at all, the plaintiff was bound to show that the defendants had been guilty of negligence and the plaintiff had exercised ordinary care and caution. It was necessary also to show that the negligence of the defendants was the cause of the injury, and that the want of care on the part of the plaintiff did not in any way contribute to it. (*Butterfield* v. *Forrester,* 11 *East,* 60. *Munger* v. *Tonawanda Rail Road Co.* 4 *Com.* 349. *Rathbun* v. *Payne,* 19 *Wend.* 400. *Hartfield* v. *Roper,* 21 *id.* 615. *Brown* v. *Maxwell,* 6 *Hill,* 592.) And the onus was upon the plaintiff to make out both propositions by affirmative evidence. The proof that the plaintiff used all requisite care, was as necessary a part of the plaintiff's case as that there was fault on the part of the defendants. (*Butterfield* v. *Forrester,* 11 *East,* 60. *Lane* v. *Crombie,* 12 *Pick.* 177. *Smith* v. *Smith,* 2 *Pick.* 621. *Spencer* v. *The U. and S. Rail Road Co.,* 5 *Barb.* 338. *Brown* v. *Maxwell,* 6 *Hill,* 592. *Bosworth* v. *Surnzy,* 10 *Met.* 363. *May* v. *Princeton,* 11 *id.* 442. *Adam* v. *Carlisle,* 21 *Pick.* 146.)

II. The proof of the plaintiff was ·insufficient to show any negligence in the defendants, or any defect in the road, in consequence of which the injury happened. (1.) Showing that the bed of the road was not of the requisite width, was not enough. It must further be made to appear that *by reason* of such defect the injury happened. (2.) Negligence or fault of the defendants, however gross, could not be made the ground

of an action unless by reason thereof the plaintiff was damaged. (3.) In this case, if it be admitted that there was a defect in the width of the road, there is a total failure of proof, to show that such defect caused the injury.

III.. Upon the undisputed and uncontradicted evidence given by the plaintiff, it is clear that the injury he received was the result of his own folly, or by reason of a fractious horse or defective harness, or imperfect management. Some or all of these contributed to the injury, and in respect thereto there is no conflict of evidence. (1.) The unhitching of the trace was the real cause of the injury. The fact of its unhitching, in the absence of explanation, is evidence that it was improperly fastened. Hence there was want of care in this respect on the part of the plaintiff. (2,) The fractious action of the horse furnishes clear evidence that he was an unsafe animal to ride after, or that he was improperly managed. In either event, the plaintiff was guilty of a want of care in being on the road behind such an animal. (3.) But if it be contended that the horse was kind, and properly managed, and the harness in safe condition, then it is most obvious that the plaintiff was guilty of gross want of care in leaping from the wagon and alighting upon stones in the ditch. (4,) Such a performance can only be justified or excused by proof that it was necessary, to avoid a greater peril. No such proof was given, nor was the plaintiff in any peril when he leaped among the stones. At the time the horse was on a gallop, but not *a fast one*, and the wagon was on the smooth road. The wagon did not turn over, nor get off into either ditch, and the horse did not run. He was manageable, and the driver did manage him. The driver, the only witness who saw the transaction, was of opinion that if Wilson had staid in the wagon he would not have been hurt. This opinion was well founded; for the driver did stay in the wagon and was not injured. There certainly was no excuse for the plaintiff's leaping into the ditch, where he received the injury. If the exigency of the case required him to leap from the wagon to avoid danger, he should have selected a reasonably safe place to alight upon. This he did not do. When he

Wilson v. Susquehannah Tnrnpike Road Co.

jumped out the horse was near the right bank, The road bed at that point was about 18 feet wide. Yet the plaintiff, instead of alighting on the smooth road bed, as he easily might, went clear over all into the ditch on the south side among the stones. (5.) Upon this evidence, the plaintiff should have been nonsuited. It was undisputed, and raised a mere question of law; or if submitted to the jury, it should have been with instructions that they were not at liberty to find the plaintiff free from fault, (5 *Barb.* 338. 13 *id.* 9.)

IV. The charge of the judge that the defendant was bound to have erected fenders, if the road was unsafe without them, was erroneous. (1.) The absence of fenders did not in any way contribute to the injury, and it was not a proper matter to be considered by the jury, as it could have no proper influence upon the question at issue. (2.) The form in which this question was put, even if it was to be regarded as a mere abstract proposition, was calculated to, and did, mislead the jury from the true question. It led them to suppose that if they were of opinion that fenders were likely to render the road more safe, they were at liberty to find for the plaintiff. (3.) The proposition was not only unsound in the abstract, but was put to the jury in an improper manner, and did no doubt mislead them.

V. The charge upon the effect of the plaintiff's intoxication was equally objectionable, and had the effect to exclude that consideration from the attention of the jury. (1.) If it was at all proper to submit to the jury the question whether the plaintiff's leaping from the wagon was an act of carelessness or not, it was certainly important for them to consider whether at the time the plaintiff was drunk or sober; whether he was in condition to appreciate his danger, or so stupid as to understand nothing. (2.) But the form of the instruction was such that the jury might properly infer that the intoxication of the plaintiff was in no aspect of the case material, and hence they might excuse him even if he was so much intoxicated that he fell out of the wagon.

VI. The verdict is wholly unsupported by evidence, and the

damages awarded are extravagant, and a new trial ought to be granted.

*L. Tremain,* for the plaintiff. The following legal principles are applicable to the case. If the road was too narrow, out of repair, unsafe or illy constructed, any individual sustaining an injury thereby may maintain an action against the corporation. (23 *Wend.* 244. 7 *Conn. Rep.* 86.) Any contracting or narrowing of the road, from the width which the corporation was originally bound to furnish the public, is a nuisance. (*Whitehall Turnpike* v. *The People,* 9 *Barb.* 161. 1 *Russ. on Cr.* 350.) Every individual who receives actual damage from a nuisance may maintain a private suit for his own injury. (4 *Wend.* 9. *Harlow* v. *Humiston,* 6 *Cowen,* 189. *Dygert* v. *Schenck,* 23 *Wend.* 446. *Townsend* v. *Susquehannah Turnpike Company,* 6 *John.* 90.) In the last case, which was against this very company, the judge lays stress upon the fact that "the act of incorporation required the company to keep the road in good repair." The company is bound by the common law to keep their road in such a state as not to be dangerous or inconvenient to the traveler. (*The People* v. *Bristol and Rensselaerville Turnpike Co.,* 23 *Wend.* 232, 3.) Where a passenger leaps from a coach or car for his safety, by reason of being placed in a perilous situation through the neglect of the proprietor, the proprietor is liable for his damages. (1 *Starkie,* 403. 3 *Chit. Pl.* 362, 9*th Am. ed. note.* *Eldridge* v. *The Long Island R. R. Co.,* 1 *Sandf.* 89. 13 *Peters,* 181.) The jury having found negligence in this company, the court refused to interfere with their verdict, although dissatisfied with the finding. (*Townsend* v. *Susq. T. Co., supra.*) Where the plaintiff left his seat in the cars and was injured on the platform, the jury having found that he was free from negligence, this court refused to interfere with the verdict on this question of negligence, although they regarded his conduct as not altogether prudent. (*Collins* v. *Alb. and Schenectady R. R. Co.,* and cases there cited by Justice *Harris,* 12 *Barb.* 492.) The general turnpike act of 1808 required at least 24 feet to be bedded. (*See Laws of* 1813, *p.*

228.) Our present general act requires at least 22 feet to be bedded. (1 R. S. 581, § 20.) Although these acts do not embrace the case of a road chartered in 1800, they furnish some evidence of the manner of constructing turnpike roads which experience had sanctioned. They may throw light upon the question whether the company exercised proper care to prevent the road from becoming unsafe. These acts required "the ditches to be made so as to render easy the passing of sleighs thereon." Also where, by reason of the steepness of side-hills or ditches, the road cannot, in the opinion of the commissioners, be made of the full width, the lower side "shall be furnished with a strong and sufficient fender or railing of the height of at least four feet above the surface of the road. (Sub. 5 of § 20, above cited.) This charter being more favorable to the company than the general law, and being also perpetual, the public have a right to require a full compliance with the charter, which is in the nature of a contract between the stockholders of the corporation and the public.' (9 Barb. 173.)

The counsel also argued the following points : 1. The judge very properly excluded evidence that the witness Dickinson had said Wilson was a fool for jumping out. It was not a statement of any fact contradicting what the witness had testified. The plaintiff was not entitled to the opinion of the witness that the act of leaping was prudent, nor was the defendant entitled to his opinion the other way. A witness is allowed to state facts only, and cannot give opinions, except in matters of science.

II. There was no error committed in refusing to nonsuit the plaintiff. (18 Barb. 420.) The motion for a nonsuit was too general to present any question for the consideration of the court. The ground of the objection should have been specifically stated ; and not having been pointed out, the decision cannot now be reviewed. (Merritt v. Seaman, 6 Barb. 330, and cases there cited, Parker, J. Underhill v. Pomeroy, 2 Hill, 603, affirmed in 7 Hill, 388. Rundle v. Butler, not reported.) But if the court should look through the evidence, in search of some ground for the motion, the examination will be fruitless. Three questions were involved in the case : 1. Was the corpo-

ration in default? 2. Did the default produce the injury? 3. Did the plaintiff's neglect contribute to the injury in any degree?, All these are questions of fact; and if there was the slightest evidence to sustain the plaintiff's case, he had a right to call for the verdict of the jury. Under the charge of the court the jury found all these questions in favor of the plaintiff. Examine the leading facts on each question: On the first, the corporation neglected—1. To maintain the road at its original width. 2. To provide a sufficient sluice. 3. To repair the gullies made by the great freshet of 1850. 4. To make the road safe and convenient by fenders or otherwise. 5. To keep the ditch on the south side so that it was passable, or to remove all the stones therefrom. 6. To cover with dirt the stones and trees thrown into the gully, and included within the bed of the road. Had the sluice been properly constructed, or had the repairs been made within a reasonable time, the gully would not have been there, and compelled the driver to rein his horse to the north bank, to avoid it, and the plaintiff would have passed along probably in safety. Again, if the road had been 20 feet wide, the horse would not have reached the north shoulder of the road. His driver would have brought him back immediately, as he did in fact, and thus there would have been no necessity for leaping from the wagon at the peril of being cast down a bank of 23 feet in height. Besides, narrow as the road was, if it had been deprived of its eminently dangerous character by the erection of strong and suitable fenders along the north shoulder, there would have been no danger of the running off, and the plaintiff would probably have retained his seat. Finally, suppose the horse standing on the very edge of the road on the north, and the wagon standing quartering across the road : if the road had been 4 to 8 feet wider on the south side (as it should have been, according to the evidence of the plaintiff's witnesses,) the plaintiff might probably have leaped with safety. He would have fallen on his feet upon a smooth, even surface. He would not at all events have encountered the difficulty which he did. Under no circumstances could he have reached the two large stones in the ditch, between which his leg was broken. There was less neg-

Wilson *v.* Susquehannah Turnpike Road Co.

ligence than in leaping from the stage coach or the rail road car, or passing out of the car on to the platform, in the cases cited. In determining this question, we should not regard the fact that the driver remained in the wagon and was saved. The question is, what would prudent men have done under the circumstances; leap from the wagon or remain and probably be dashed to pieces? The decision must have been made instantaneously. Humanity forbids that such an act should be declared imprudent and careless, much less that it should be so pronounced as matter of law, and the peculiar province of the jury to pass upon it invaded by the court.

III. There was no error in the charge in relation to fenders. The charge does not mean that the general law covered the case of this corporation. The contrary is implied: for if it did, the company would have been absolutely bound to erect fenders, whether the road was safe or not. It was clearly the duty of the company not to suffer their road to become unsafe and dangerous from any cause. (*See precedents of indictments against persons or bodies bound to repair. See also* 23 *Wend.* 233.) The judge would therefore have been fully justified in charging that the company was bound to use all means necessary to prevent the road from becoming or continuing unsafe. This charge was far more favorable to the defendant. It had appeared from the undisputed evidence, that years after the road had been inspected and established, the company, without legislative authority, raised its bed to a greater height, and at the same time narrowed, essentially, the road. It also appeared that this left a steep bank, on the north side, of 23 feet. Now, the charge simply affirms that under such circumstances, if the company could by erecting fenders render the road safe to the traveler, while without them it would be unsafe or dangerous, they are bound to erect them. To hold this error, would decide that although the corporation had made the road dangerous by a change in the mode of its construction, and although it might make it entirely safe by a simple, easy remedy, that it was not bound to apply the remedy.

IV. The charge, in reference to the intoxication of the plaintiff, was obviously proper.

V. This case comes before the court on a formal bill of exceptions. No question therefore arises except upon the four exceptions taken by the defendant during the trial. If neither of these is well taken a new trial cannot be granted. The court is also referred to the case of *Beers* v. *The Housatonic R. R. Co.*, (19 *Conn. Rep.* 566,) in which the court, in a full and able opinion, decides two points : 1. That negligence is a question exclusively for a jury ; and that even if the facts are admitted, the court will not, as matter of law, decide that they prove negligence. 2. That it is not every degree of negligence on the part of the plaintiff which will defeat his right to recover, but it must be a want of that reasonable care, which ordinary men would exercise. The last point is also held in 10 *Mees. & .W.* 545, and 3 *id.* 244.

*By the Court*, PARKER, P. J. The right of the plaintiff to recover in this cause depends upon two questions, viz : whether the injury of which he complains was caused by the neglect of the defendant to construct the road as required by the statute, and to keep it in proper repair ; and whether any fault or want of care on the part of the plaintiff contributed to the injury. Unless the injury is wholly chargeable to the fault of the defendant, the plaintiff cannot recover.

We have been referred, by counsel on both sides, to that class of cases in which actions are brought against carriers of passengers, to recover damages for injuries sustained from the use of unsound or unsafe vehicles, or the employment of unskillful drivers and servants. In such cases, the law demands the utmost human foresight, and that degree of diligence which characterizes very cautious persons. (*Edwards on Bail.* 584. 9 *Bing.* 457. 13 *Wend.* 627.) As far as human care and foresight will go, they must be put in requisition to transport safely. (*Stokes* v. *Saltonstall*, 13 *Peters*, 191.)

But this case does not belong to that class. The defendant has not assumed the more delicate and responsible task of trans-

Wilson *v.* Susquehannah Turnpike Road Co.

porting the plaintiff, but is chargeable only with the duty of providing the road over which he may travel. If a question had arisen as to the safe construction of bridges, the defendant would be held responsible for the exercise of ordinary care and skill, but for nothing further. It was so adjudged in *Townsend* v. *this same defendant*, (6 *John.* 90.) In that case the court said, "the defendants are bound to bestow ordinary care and diligence in the construction and preservation of their bridges. They are not responsible for accidents, if these accidents do not arise from the want of this ordinary care and skill."

If there was a failure on the part of the defendant to comply with an express requirement of the statute, either as to the width of the road, or the mode of its construction, and a person traveling over it sustained an injury in consequence of such omission, the defendant is responsible, unless it appears that the plaintiff could have avoided the injury by the exercise of ordinary care and prudence. In such case there is no question involved, of want of skill or care on the part of the defendant, but the omission to comply with the statutory requirement is a nuisance, for which a party injured, without negligence on his part, may claim damages. (*Harlow* v. *Humiston*, 6 *Cowen*, 189. *Dygert* v. *Schenck*, 23 *Wend.* 446.)

Such is the question presented in this case. If the plaintiff's injury was justly and wholly chargeable to any neglect of the defendant to construct or maintain the road as required by law, he is entitled to recover. If it was not chargeable to any such omission, or if fault or want of care on the part of the plaintiff contributed to the injury, the action is not sustainable.

When the plaintiff came to the part of the road complained of, he was not driving along in the ordinary manner. Whether the unfastening of the trace was owing to want of care on the part of those traveling, or whether it was purely accidental, and beyond the control of ordinary care, it was not certainly chargeable to the defendant. It was either the plaintiff's fault or his misfortune that the failure of the harness had rendered the horse less manageable, and exposed the plaintiff to peril. Under such circumstances, the plaintiff sprang from the wagon to

escape apprehended danger, and received, by his fall, the injury for which he now seeks recompense. The wagon was not over-turned, nor was the companion of the plaintiff thrown out, and there can be little if any doubt but the plaintiff would have been uninjured if he had not jumped from the wagon.

Under such circumstances, it is necessary to ascertain whether the defendant is legally answerable for the consequences to the plaintiff of his leaping from the wagon. The plaintiff relies upon the case of *Stokes* v. *Saltonstall*, (13 *Peters*, 181.) That was an action against stage coach proprietors for an injury to a passenger, occasioned by the upsetting of a coach; and it was held that if the want of proper care or skill of the driver placed the passengers in a state of peril, and they had, at that time, a reasonable ground for supposing that the stage would upset, or that the driver was incapable of managing his horses, the plaintiff was entitled to recover, although the jury might be-lieve, from the position in which the stage was placed by the negligence of the driver, that the attempt of the plaintiff to escape might have increased the peril, or even caused the stage to upset, and although they might also find that the plaintiff would probably have sustained little or no injury, if he had remained in the stage. In that case the peril from which the party sought to escape, was chargeable directly to the defendant, and the decision was put upon that ground. The life of the passenger being jeoparded by the unskillfulness of the defendant's servant, the defendant was held responsible for the consequences, though the passenger may have judged unwisely as to the best means of escaping. It was only hold-ing the defendant responsible for the confusion of ideas and perturbation of mind consequent upon his own act.

But this case is widely different. The peril from which the plaintiff sought to escape, when he leaped from the wagon, was in no part chargeable to the defendant. Whether that peril was the immediate consequence of the unfastening of the trace, or the unmanageable character of the horse, or the want of skill in the driver, it is not material to inquire. It is certain

it was not chargeable to any defect in the road; and beyond that the defendant cannot be responsible.

It was then without either necessity or excuse imposed by any act of the defendant, that the plaintiff incurred the imminent hazard of leaping from the wagon upon the stones in the ditch; an act quite likely to be productive of serious consequences, even if the stones had been covered with the same material as the bed of the road, and which would not have been prevented by the erection of fenders. If a man judge unwisely as to taking such a leap, when it is quite certain he would have been uninjured if he had remained in the wagon, I do not see upon what principle the defendant, not being in any respect a party to the transaction, can be held responsible for the consequences.

If the road was not of the required width at the place of the leap, or not protected by fenders, or not properly covered where the plaintiff alighted, it might furnish a legal ground of complaint, if a traveler, moving over the road in some accustomed mode of travel, should sustain injury, notwithstanding the exercise of ordinary care on his part. But beyond that, I think the defendant is not liable. The company cannot be held answerable for the safety of a traveler who uses the road for a purpose so widely different from the object of its creation. The defendant is not required to cover the road with materials upon which a person may safely alight after so fearful a leap.

It cannot with any propriety be urged that because there were no fenders the plaintiff had reason to apprehend that the horse would run down the bank, and that he leaped out of the wagon to escape such a hazard. The result proved that such fears were unfounded, and there is no reason why the defendant should be answerable for an unnecessary and imprudent act of the plaintiff.

There is no legal construction which can be put upon the facts in this case that will support this recovery. The great injury sustained by the plaintiff was well calculated to mislead a jury, by enlisting their sympathies, if not their prejudices;

but, in my judgment, it was not a case for the jury. Upon the plaintiff's own showing, he failed to make out a case, and a nonsuit should have been ordered. The judgment at the circuit ought, therefore, to be reversed, and a new trial awarded.

[ALBANY GENERAL TERM, December. 3, 1855. *Parker, Wright* and *Watson,* Justices.]