Richard S. Heller, J.
Before proceeding to the facts and the disposition of these claims it seems appropriate to discuss the question as to whether or not the liability of the Thruway Authority for negligence is different from the liability imposed upon the State of New York.
The claimants here point to distinctions between highways maintained and operated by the State and highways maintained and operated by the Thruway Authority. They point out that the Thruway Authority is an independent and autonomous corporate body which charges a toll for the use of its highways with the amount of the charge measured by the number of miles travelled. They urge that because of these distinctions some different and more stringent standard of care is owed by the Thruway Authority to the users of its highways than is owed by the State to the users of State highways. In support of this contention claimants cite a number of eases decided in other jurisdictions involving toll roads of a much earlier time in the history of the nation.
The basis of these claims is an assertion that the Thruway Authority owed a duty to the claimants, that it failed to carry out this duty and that injury resulted. (Palsgraf v. Long Is. R. R. Co., 248 N. Y. 339; 1 Shearman and Redfield, Negligence [Rev. ed.], p. 9.)
In waiving its immunity the State consented to have its liability determined ‘ ‘ in accordance with the same rules of law as applied to actions in the supreme court against individuals or corporations. (Court of Claims Act, § 8.) In applying this waiver of immunity the courts have consistently applied the same principles of law as exist between individuals or corporations ”. Thus the State has been held to owe a duty to ‘1 construct and maintain its highways in a reasonably safe condition, in accordance with the terrain encountered and traffic conditions to be reasonably apprehended”. (Boyce Motor Lines v. State of New York, 280 App. Div. 693, 696.) This rule of reasonable care commensurate with the dangers to be reasonably apprehended has been consistently and unvaryingly applied. (Murphy v. State of New York, 283 App. Div. 980; Wilke v. State of New York, 178 Misc. 765; Nichols v. State of New York, 286 App. Div. 281; Canepa v. State of New York, 306 N. Y. 272, affg. 203 Misc. 694.)
Claimants suggest that the Thruway Authority must be held to a more stringent duty to the users of its highways without making any effort to define the limit of this duty. In the absence of some specific imposition of a different standard by mutual agreement or by legislative action, the requirement *785 of the law is reasonable care commensurate with the risks to be reasonably apprehended. “ The law makes no unreasonable demands. It does not require from any man superhuman wisdom or foresight. Therefore no one is guilty of negligence by reason of failing to take precautions which no other man would be likely to take under the same circumstances.” (1 Shearman & Redfield, Negligence. [Rev. ed.], p. 12.)
Even assuming that the payment of a toll placed the claimants in the position of business visitors to the highway maintained and operated by the Thruway Authority, the measure of the Thruway Authority’s duty would be and is reasonable care commensurate with the danger to be reasonably apprehended. (Greene v. Sibley, Lindsay & Curr Co., 257 N. Y. 190.)
There is no basis for extending the measure of the Thruway Authority’s duty beyond the standards applicable between individuals or corporations and applicable to the State in regard to State highways and other State operations such as parks and buildings. The Thruway Authority was created by the State Legislature as a public corporation to carry out a governmental function. (Public Authorities Law, §§ 352-353.) It has the power to sue and be sued and “ subject to agreements with noteholders or bondholders, to fix and collect such fees, rentals and charges for the use of the thruway or any part thereof necessary or convenient, with an adequate margin of safety, to produce sufficient revenue to meet the expense of maintenance and operation and to fulfill the terms of any agreements made with the holders of its notes or bonds, and to establish the rights and privileges granted upon payment thereof ”. (Public Authorities Law, § 354, subd. 8.)
Nothing in title 9 of article 2 of the Public Authorities Law imposes any different measure of duty on the Thruway Authority to the users of its highways than is applicable as between individuals or corporations or between the State and the users of State highways. The highways of the Thruway Authority are public highways in every sense of the word with the use thereof conditioned upon the payment of a toll charge. The fact that the costs of these highways are met by fees paid by the users thereof rather than from the general tax revenues of the State does not in any way affect the measure of the duty owed to the users of the highway by the Thruway Authority. The measure of that duty remains reasonable care commensurate with the dangers to be reasonably apprehended.
The cases cited by the claimants springing from other times and other jurisdictions are not applicable here. Many of them have no application whatsoever to the situation present here. *786 Some of them contrast the measure of the duty owed by the toll road company with an undefined duty owed by municipal authorities at that time and that place. Such a comparison is meaningless unless the duty owed by the municipal authority is defined. Other cases cited by the claimants deal with a failure to comply with a duty imposed by statute. Actually, in most of the cases cited by claimants the measure of the duty was reasonable care.
In this jurisdiction this was the measure of care imposed upon toll road companies. (Wilson v. Susquehanna Turnpike Road Co., 21 Barb. 68.)
The contention of the claimants that there is a different and more stringent measure of the duty owed by the Thruway Authority to the users of its highway than is owed by the State to the users of State highways because of the independent and autonomous corporate existence of the Thruway Authority and the payment of a toll must be rejected by the court.
On June 29, 1957, the claimant, George E. Waterman, was driving Ms 1954 Studebaker station wagon easterly on the eastbound section of the New York State Thruway. His wife, Ruth, was riding in the front seat with him and Richard, their son, was asleep on the back seat.
As the Waterman car was proceeding next to the acceleration lane of the Indian Castle Service Station area, a car with a house trailer, also traveling in an easterly direction, passed the Waterman vehicle, pulled over to the right and forced Waterman to the south edge of the paved portion of the highway and onto the gravel shoulder. There was a drop of two and one-half inches to three inches between the concrete edge of the pavement and the shoulder. Waterman stated that as he struggled to get the car back onto the pavement he put on the brakes, but he remembers nothing more until he regained conciousness following the accident. What Waterman does not remember is that Ms car veered northeasterly across the two-lane south section of the Mghway, then across the mall separating the dual highway, across the south lane of the westbound section and into the north lane of that section where it collided head-on with a car driven westerly and in the north lane by Leonard Webster. This collision caused the injuries which are the subject of these claims. All three Watermans were injured and Mrs. Leonard Webster, a passenger in her husband’s ear, was Mlled.
The vertical drop from the straight edge of the concrete pavement to the shoulders shows a lack of proper maintenance of this highway. TMs highway was built as a superhighway *787 with a speed limit of 60 miles per hour. The degree of eare required is that care which will provide a safe and convenient highway for a reasonably prudent driver taking into consideration increased traffic loads, higher speed and the foreseeable hazards attendant thereto, including safe shoulders for use in an emergency. (Russell v. State of New York, 268 App. Div. 585.)
The Thruway Authority had actual knowledge that this condition or a like condition had existed prior to the accident. Where they have knowledge that a continuing or recurring hazard exists, they have a duty to eliminate the hazard or to warn of its existence. (Haggerty v. State of New York, 275 App. Div. 981, affd. 300 N. Y. 537.)
It is the opinion of the court that the failure of the Thruway Authority to adequately maintain the shoulder just east of the junction of the acceleration lane and the highway constituted negligence, which was a proximate cause of this accident.
The court finds that the passengers in the Waterman car were free from any negligence which contributed to the accident. The court finds that Leonard E. Webster and his intestate, Beulah M. Webster, were free from any negligence which contributed to the accident.
The question of the contributory negligence of George Waterman presents a more complex problem. It can be argued that after he left the paved portion of the highway he could have safely ridden the wide shoulder which was available for emergencies and that after he had his car under control he could have returned safely to the pavement. This action presumes that the driver would have taken for granted that the shoulder was wide, smooth and safe. However, the only knowledge that the driver had as to the condition of the shoulder was that it was below the highway enough to register a noticeable drop when the wheels left the highway. He was confronted with the problem of going on further into a possible defective shoulder or, as an alternative, to try to bring his car back to the safety of the concrete road. It can be argued that he did not brake his car properly and that for this reason he was not a prudent driver. In an emergency a driver cannot be expected to remember all of the rules and good practices with the same sense and resourcefulness he used in anticipation of a known hazard.
George E. Waterman was driving well below the speed limit and in keeping with the gusty weather. Just east of the junction of the acceleration lane with the highway, he was forced off the highway by a passing car. His two right wheels dropped off the concrete highway onto the shoulder. Realizing he was in *788 trouble, he braked his car and attempted to get back on the concrete by pulling to the left. The car travelled between 40 feet and 50 feet, on the shoulder, then approximately 100 feet across the highway and mall to the point of the collision. Under the most favorable conditions it might have been possible to stop the car before this accident occurred but in the few seconds allowed the driver here and the obstacles encountered it was impossible. Under all of the circumstances the court must find that George Waterman did everything a reasonably prudent man could have done. He is absolved of any negligence which contributed to this accident. (Goodwin v. State of New York, 274 App. Div. 824, affd. 298 N. Y. 873.)
Beulah M. Webster, 52 years of age at the time of her accident, was survived by the claimant, Leonard E. Webster, and three children. The children were all of age and resided away from home. Mrs. Webster had been gainfully employed prior to her death with approximate earnings and extras in the amount of $2,700. She was in good health and performed all of the necessary household duties for her husband. Funeral expenses amounted to $925. Considering her age, her life expectancy, her occupation and earnings, and the pecuniary loss to the husband and next of kin it is the opinion of the court that the claimant, Leonard E. Webster, as administrator, etc., has been damaged in the amount of $20,925. Inasmuch as the administrator has already received $10,000 in settlement of any cause of action he might have had against George E. Waterman, the award herein to Leonard E. Webster, as administrator, etc., is $10,925.
Richard Waterman was 4 years of age at the time of the accident. He suffered a concussion, contusions and a fracture of the left tibia. He was confined to the hospital for about six weeks. There is no evidence of any permanent injury. Richard Waterman, an infant, by George E. Waterman, his guardian ad litem, is entitled to an award against the New York State Thruway Authority in the sum of $4,000.
Ruth Waterman was confined to the hospital for approximately six weeks. Her injuries consisted of lacerations of the lip and forehead, contusions of both knees and ribs, fractures of the second, third and fourth toes and dislocation of the fifth. Permanency consists of a Y-shaped scar on the upper lip, a misshapen left foot with impairment of circulation and discomfort. Ruth Waterman is entitled to an award against the New York State Thruway Authority in the sum of $12,000 for all damages, past, present and future.
*789 George E. Waterman, 37 years of age at the time of the accident, suffered a fractured jaw, multiple fractures of the hones of the face, a fractured left wrist and a fractured left kneecap. In addition, he suffered a concussion, multiple lacerations and contusions. His jaw was wired for seven weeks and three of his teeth were lost in the accident. Permanency includes a disability of the jaw with a deformity of the face, a 60 to 70% loss of use of the left wrist, a 20-degree restriction of flexion of the left knee and a 15-degree restriction of the left leg. He was disabled and unable to work for seven months and lost wages in the sum of $2,900. His own medical expenses were $4,206.55. It is certain that additional dental care will be required. He is entitled to recover $100 for damage to his automobile. He is also entitled to recover the medical expenses for his wife Ruth in the sum of $1,212.74 and for his son Richard in the sum of' $809.65. Claimant George E. Waterman has been damaged in the sum of $45,000 and is entitled to an award in that amount against the New York State Thruway Authority for all damages, past, present and future.
The claims herein were duly filed and have not been assigned.
The claims against the State of New York are dismissed since the State is not a party responsible.
The following is a recapitulation of the disposition of the claims.
Claim No. 34911, George E. Waterman, claimant, against the State of New York and the New York State Thruway Authority. Claimant is entitled to a judgment against the New York State Thruway Authority in the amount of $45,000.
Claim No. 34912, Ruth Waterman, claimant, against the State of New York and the New York State Thruway Authority. Claimant is entitled to a judgment against the New York State Thruway Authority in the amount of $12,000.
Claim No. 34913, Richard Waterman, an infant, by George E. Waterman, his guardian ad litem, claimant, against the State of New York and the New York State Thruway Authority. Claimant is entitled to a judgment against the New York State Thruway Authority in the amount of $4,000.
Claim No. 35135, Leonard E. Webster, as administrator of the estate of Beulah M. Webster, against the State of New York and the New York State Thruway Authority. Claimant is entitled to a judgment against the New York State Thruway Authority in the amount of $10,925, with interest thereon from June 29, 1957 to the date of entry of judgment.
The foregoing constitutes the written and signed decision of the court upon which judgment may be entered. Let judgment be entered accordingly.