OPINION OF THE COURT
Frank S. Rossetti, J.
This claim is for damages arising from personal injuries sustained by Georgia Retzel in a two-car collision on State route 22 in the Town of Canaan, Columbia County. Claimant’s basic contention is the collision was caused at least in part by a defective and dangerous shoulder which defendant negligently failed to repair and maintain.
In the area where the accident occurred, route 22 was a two-lane concrete highway running generally north and south (i.e., one lane running in each direction). The posted speed limit was 55 miles per hour. Just south of the accident site, the highway was intersected from the east by route 102. This latter road terminated there and thus the intersection was T-shaped. A stop sign on route 102 controlled traffic coming onto route 22 from said road. At the intersection, there was a tapered third lane on the east side of route 22 for traffic coming off of and onto route 102. Thus for a car going north on route 22, the road gradually widened to include a third lane on the right at the route 102 intersection and then narrowed back to two lanes north of the intersection.
On August 26, 1971, at about 8:45 a.m., claimant was traveling south on route 22 toward the route 102 intersection. Mrs. Retzel planned to make a left turn onto route 102 and testified she had her left turn signal on and was not going very fast. At the same time, Lillian Budd was apparently driving north on route 22 and had just gone past route 102. Truck driver James Michalski (the only surviving eyewitness to the accident besides claimant), who had been proceeding west on route 102, was stopped at the route 102 stop sign preparatory to making a right turn onto route 22. Upon looking to his right, he saw the Budd vehicle going away from him (i.e., north) with its right two wheels on the easterly *565 shoulder. His testimony[1] indicated Mrs. Budd was "fighting” the steering wheel to bring her car back on the pavement, but, due to a dropoff in the shoulder, she was temporarily prevented from doing so by the exposed edge of the concrete pavement. Mr. Michalski observed her proceed in this manner for what he estimated to be 10 to 20 feet before her car came off of the shoulder. It then shot across route 22 into the southbound lane where claimant’s car was approaching. Claimant applied her brakes and pulled to the right in an attempt to avoid the Budd vehicle. However, there was not time for her to do so and the left front of the Budd car hit the left front of her car. Both Mrs. Retzel and Mrs. Budd were injured and hospitalized (neither had any passengers), with the latter succumbing to her injuries five days later.
From the testimony of the State Trooper (Spencer O’Brien) who investigated the accident, the measurements he made and the photos he had taken, we have concluded that Mrs. Budd’s car was on the shoulder adjacent to where route 22 tapered from three lanes to two and that her car regained the pavement just south of the north end of said taper (i.e., just south of where the road resumed its two lane, 22-foot wide configuration). Said evidence and the testimony of Mr. Michalski clearly established this shoulder was extensively "washed out” and irregular along the edge of the pavement, to a depth which Trooper O’Brien measured to be from three and one-half to nine and one-quarter inches below the pavement. This depression of the shoulder exposed the edge of the pavement and after the accident Mr. Michalski found rubber remnants on said edge which had apparently rubbed off Mrs. Budd’s tires in her attempts to regain the roadway. Trooper O’Brien testified he became aware of the shoulder depression four to five months prior to the accident and told the State Department of Transportation supervisor for the area thereof. This supervisor testified to the contrary, but we did not find his testimony convincing or to be of significant probative force.
The State’s duty in the instant circumstances may be stated as follows. While the shoulder is generally considered part of a State highway (see, e.g., 4B Warren’s Negligence, Highways, § 2.11), it is not intended for normal travel and the State is not required to maintain it in the same condition as the regularly traveled roadway (see Eckerlin v State of New *566 York, 17 Misc 2d 224, 226, affd 9 AD2d 717). However, the shoulder is intended for use when an emergency or other special circumstances require it (see Russell v State of New York, 268 App Div 585, 587-588) and the State therefore has the duty to maintain the shoulder in such condition that it may be so used without danger (see Thompson v State of New York, 154 Misc 707, 710, mod other grounds [damages] & affd 247 App Div 858).
The State concludes from these general rules that for claimant to recover here, it is part of her burden of proof to properly establish by competent evidence that an emergency necessitated Mrs. Budd’s use of the subject shoulder. Apparently defendant believes that if a motorist uses a shoulder when there is no emergency, the State’s duty to maintain its shoulders in a nondangerous condition somehow magically disappears. Proper legal analysis reveals this not to be so.
When a motorist goes upon a shoulder where there are no emergency or other special circumstances requiring it, he will be chargeable with negligence for unreasonably deviating from the regular roadway provided and intended for his normal travel. (See Pace v State of New York, 14 AD2d 957.) If such a driver seeks to recover from the State for damages resulting from a defective shoulder so used, his said contributory negligence will bar his claim (at least for claims accruing prior to September 1, 1975 — see CPLR 1411-1413) irrespective of the State’s negligence in maintaining the shoulder. (See Rolando v Department of Transp. of State of N. Y., 58 AD2d 694, 695.) Thus in any claim where the driver is the sole claimant, it is part of his burden of proving freedom from contributory negligence to show an emergency or some other special circumstance required him to use the shoulder. (See Scott v State of New York, 19 AD2d 574, 575.) However, where, as here, one other than the driver is the claimant, it is not necessary for said claimant to make such a showing since any contributory negligence of the driver is generally not imputable to her. (See Scott v State of New York, supra; Thompson v State of New York, supra, p 710; Peek v State of New York, 137 Misc 840, 844.)[2] Rather, she need , only show *567 that the State’s negligence was a proximate cause of the accident (see Russell v State of New York, 268 App Div 585, 588, supra; Lewis v State of New York, 14 Misc 2d 443, 446-447) and, as far as her proof is concerned, it doesn’t matter whether defendant’s negligence was the only cause of the accident or combined with the driver’s negligence in bringing it about. We believe the above distinctions should be clearly understood not merely because of their applicability to the case sub judice, but also because of their relevance to pending and future cases involving comparative negligence.[3]
On the evidence presented, we believe claimant has adequately shown the existence of a hazardous condition (see Schill v State of New York, 258 App Div 769; Waterman v State of New York, 24 Misc 2d 783, 786-787, judgment vacated 13 AD2d 619;[4] Gruneisen v State of New York, 14 Misc 2d 373, 375; Buffington v State of New York, 2 Misc 2d 496, 500)[5] of which the State had actual and constructive notice (see Lewis v State of New York, supra, p 445) and as to which the State had a duty of repair. It failed to properly discharge this duty and thus is chargeable with negligent maintenance. We also find that this negligence was a proximate cause of the claimant’s damages.
First, as found above, a reasonable appraisal of the evidence supports a finding that the shoulder depression Mr. Michalski saw Mrs. Budd struggling to get out of was that adjacent to the northern end of the third lane taper.[6] The evidence *568 adduced did not conclusively establish that Mrs. Budd traversed the entire length of the depressed and irregular shoulder or arguably even the worst part thereof, but it was sufficient to support a finding that Mrs. Budd was stuck in at least the northerly portion of the negligently maintained shoulder.
Second and more importantly, the evidence concerning Mrs. Budd’s operation of her car was not such as to demonstrate that her actions were the sole proximate cause of the accident. Admittedly there did not exist any evidence of an emergency or other special circumstances justifying her going on the shoulder initially. Mr. Michalski did not see her until after she got there and both he and claimant testified that they observed no traffic which could have provided an occasion for Mrs. Budd’s emergency use of the shoulder. Further, although the white line delineating the edge of pavement was all but indiscernible adjacent to the subject shoulder, and although there was no sign warning of the narrowing of the pavement north of the route 102 intersection, Mr. Michalski’s testimony indicated the sun was up and there was clear visibility. Hence, while these latter items of putative State negligence could have been causative factors in a motorist’s failure to stay on the pavement under other circumstances, they were seemingly not significant here since the subject shoulder was reasonably distinguishable from the pavement and Mrs. Budd should have been able, in the exercise of reasonable care, to discern it under the instant conditions (see Gould v State of New York, 130 Misc 776, 778, affd 224 App Div 773). Accordingly, in view of Mrs. Budd’s demise and the absence of any other source of evidence as to why she left the pavement, it would be pure speculation for us to make any finding with respect thereto.
Nonetheless, even if Mrs. Budd were negligent in going on the shoulder, we believe a fair evaluation of the evidence does not warrant a finding that such alone was the cause of the subsequent collision. There was no evidence she was speeding[7] and, as hereinafter found, her conduct once on the shoulder *569 cannot be said to have been unreasonable. (See Taylor v State of New York, 262 App Div 657, 658, affd 288 NY 542.) In short, there was nothing to indicate that if there had been no defective, depressed shoulder, she wouldn’t have been able to safely return to the pavement. (See Taylor v State of New York, supra.) To effect a quick escape from the dangerous shoulder, it was obviously necessary to turn strongly to the left. We think it a more than fair inference to conclude that this forceful turning was the immediate cause which precipitated the Budd car into claimant’s. (See Gruneisen v State of New York, 14 Misc 2d 373 377, supra.) Basically, had defendant not been negligent, there would have been no accident. (See Peek v State of New York, 137 Misc 840, 844, supra.) Thus even if it were possible to show Mrs. Budd was negligent in going onto the shoulder, that would only have the effect of making the State’s negligence a concurrent proximate cause. (See Kirchner v State of New York, 223 App Div 543, 546.) It would not relieve the State from the responsibility for the foreseeable consequences of its negligence.[8]
Finally, the evidence indicated that once Mrs. Budd was on the shoulder, her attempts to extricate herself from the predicament the State’s negligence (and, arguably, her own) put her in were reasonable. The shoulder was significantly below the level of the pavement and it was irregular and bumpy. Conceivably, Mrs. Budd could have continued on this hazardous shoulder and hoped she could stop or reach less dangerous terrain before losing control. However, there was no evidence of how soon she could have stopped or if she was aware of or able to discern the extent of the dangerous shoulder depres *570 sion. Her obvious alternative to trying to ride through the hazard was to attempt to get out of the depression and return to the pavement before she lost control. This was the course she chose and we cannot say it was an unreasonable one. (See Waterman v State of New York, 24 Misc 2d 783, 787-788, supra; cf. Worden v State of New York, 221 App Div 671, 674-675; Tomasetti v State of New York, 203 Misc 297, 298-299, affd 283 App Div 837.) Consequently, once she was on and in the hazardous shoulder, we believe her conduct cannot be said to have been negligent and, even if it was, it certainly was not such negligence as to intervene between and supersede that of the State.
As to contributory negligence, claimant has clearly shown she was free thereof. She was not speeding, she applied her brakes and turned to the right in an attempt to avoid the Budd car. As substantiated by the testimony of Mr. Michalski, she did all that could reasonably be expected under the circumstances, but, due to the suddenness with which the Budd vehicle was precipitated into claimant’s path, a collision could not be avoided. Under the subject circumstances, she cannot be charged with any negligence in the collision which caused her injuries.
Accordingly, we find the State was guilty of negligence which was a proximate cause of the accident and claimant was free of any contributory negligence with respect thereto.
At trial, Mrs. Retzel admitted that she and her husband had brought suit against Mrs. Budd’s estate and that the action was subsequently settled for $15,000. However, she also produced the settlement release and contends that since it includes payment for damages recoverable by her husband, only half thereof ($7,500) should be offset against any recovery herein.
The effect to be given this release (executed April 4, 1975) is governed by section 15-108 of the General Obligations Law. This statute covers releases given to actual or claimed joint tort-feasors and first of all provides that a release given to one joint tort-feasor does not release any others unless it expressly so provides. Nonetheless, the statute further provides that such a release will reduce the releasor’s claim to the extent of the greater of the amount stipulated therein or paid therefor (here $15,000).[9] Thus, the issue here is whether claimant’s *571 recovery should be reduced by all or only part of the release’s $15,000.
Preliminarily, we note that claimant has cited two cases (Wheeler v State of New York, 286 App Div 310, and Latoni v City of New York, 11 Misc 2d 363) holding that a defendant asserting the defense of release to another joint tort-feasor has the burden of proving that such tort-feasor was actively negligent. While she used them, incorrectly, as authority for her questionable contention that the State has the burden to show Mrs. Budd’s conduct was the sole proximate cause of the accident, we do believe they should be discussed here since they a fortiori support the proposition that a defendant claiming the defense of release must first show that the released third party was in fact a joint tort-feasor. These cases were decided under the former common-law rule that a release to one joint tort-feasor completely satisfied the releasor’s claim and thus also released all other joint tort-feasors, unless the releasor reserved his rights against such others. (See, e.g., 49 NY Jur, Release and Discharge, § 40, pp 424-430.) A release without reservation thus provided a complete defense in any subsequent action by the releasor against other joint tortfeasors and it is therefore understandable that the cited cases imposed the said burden of proof on defendants attempting to totally escape liability through the defense of release. Section 15-108 has expressly effectuated the abrogation of the common-law rule (see L 1972, ch 830, esp note appended thereto) and thus eliminated the raison d’etre for imposing the said burden of proof. The inclusion of the word "claimed” in the statute makes it clear that a defendant seeking to assert the defense of release (which is now only a pro tanto one — see infra) no longer has to produce the said proof.
Turning to the substantive issue of what amount claimánt’s recovery should be reduced by, the court notes that it could find no cases in point decided under the subject statute. However, we are of the view that principles formulated under the former common-law complete defense of release can provide useful guidelines in the determination of the legal rules applicable to the pro tanto defense raised by the State. Therefore, while defendant generally has the burden of proving the *572 release here (see McLaughlin, Practice Commentary, McKinney’s Cons Laws of NY, Book 23A, General Obligations Law, § 15-108, p 719), we also think said burden has been met prima facie through claimant’s testimony and the receipt in evidence of the release itself. (See 49 NY Jur, Release and Discharge, § 45, pp 445-447.) Further and more importantly, under the former common-law complete defense, a releasor seeking to avoid such effect of a release ordinarily had the burden of coming forward with evidence of the release’s invalidity once the said defense had been prima facie established (see id., pp 447-448). A corollary to this rule was the holding that a releasor claiming that his release had not effected full satisfaction of his claim had the burden of so proving. (See id., n 20, p 445.) Applying like principles to the facts at hand, we consider it fair and proper to impose on claimant the burden of showing the subject release was only partially valid as to her and that only a part thereof was in satisfaction of her claims. Mrs. Retzel was a party to the release and if she wanted it to apply to her only partially, she could and should have so specified therein (she and her husband apparently had inserted a specific typewritten provision reserving their rights against other described entities).
The court realizes that a typical settlement of the type consummated in the subject release would not normally consider such itemization of claims and/or damages. However, as between claimant and a party such as the State here, who was not privy to the release and thus unable to control its substance and form, we believe equity and justice favor the imposition of such an evidentiary burden of coming forward on the claimant. Otherwise, by the simple expedient of splitting their claims, a husband and wife could avoid the effect of their release entirely. Mrs. Retzel has not come forward with any satisfactory evidence of what part of the $15,000 was for her claims and what part was for her husband’s. We therefore conclude she has not adequately met her burden of showing that less than all of such sum should be applied against her recovery from the State.
Based on the entire record herein, the court determines that claimant has sustained damages of $32,500 for all personal injuries, pain and suffering, medical expenses and any other damages. However, from this amount is deducted the sum of $15,000 heretofore recovered from Mrs. Budd’s estate in connection with the subject occurrence.
*573 All dismissal motions made by the State, upon which decision was reserved, are now denied.
Accordingly, the clerk is hereby directed to enter judgment on behalf of claimant, Georgia Retzel, and against the State of New York in the amount of $17,500.

. Mr. Michalski did not testify at trial, but instead his pretrial deposition was admitted into evidence, he being a nonresident (see CPLR 3117, subd [a], par 3, cl [ii]).

. We note that in a wrongful death action by a driver’s estate, where the burden of proving contributory negligence is on the defendant (see EPTL 5-4.2), the State would have the burden of showing that there was no emergency or other special circumstances justifying the deceased driver’s use of a shoulder. (See Scott v State of New York, supra, p 575 & 27 AD2d 961, 962.) Thus here, were Mrs. Budd’s administratrix *567 suing the State for wrongful death, the State would have the burden of showing that Mrs. Budd’s going on the shoulder was unwarranted. As hereinafter discussed, there was simply no evidence as to why or how she went on the shoulder and hence, in such a suit, the State would be unable to use any putative contributory negligence of Mrs. Budd to bar her estate’s claim. It would clearly be anomalous if Mrs. Budd’s distributees could recover, but the woman she ran into could not.

. Of course, in such latter cases the negligence of parties other than the State will be relevant, but such will be a matter for the State’s pleading and proof, not claimant’s (see CPLR 1412).

. The judgment in this case was vacated because the stenographic minutes were lost and thus no appeal could be made (see Waterman v State of New York, 13 AD2d 619, supra), but after a second trial the same State liability was found and substantially similar judgments were entered (see Waterman v State of New York, 35 Misc 2d 954, revd 19 AD2d 264, affd 17 NY2d 613).

. The shoulder condition was particularly hazardous in view of the high speed limit of the road (55 miles per hour — see Waterman v State of New York, 24 Misc 2d 783, 787, supra).

. Certain distance estimates in Mr. Michalski’s deposition are susceptible of other interpretations, but the totality of his testimony, when correlated with the other evidence, supports the above finding. Also, said estimates may have been the result of *568 a misconception of the third lane taper or merely rough and/or inaccurate approximations.

. In view of the high speed limit of route 22 and the fact the collision was head-on (wherein the force of impact is the sum of the speeds of the two cars, not just the speed of one or the other of them), it would be blatant conjecture on this record for us to draw any conclusions as to Mrs. Budd’s speed from the damage sustained by the two cars. (Cf. Harford v State of New York, 19 Misc 2d 7, 8, 9, affd 17 AD2d 680.)

. Defendant cites and quotes Stuart-Bullock v State of New York (33 NY2d 418, affg 38 AD2d 626) and Roberts v State of New York (Ct of Claims, Claim No. 45327, May 21, 1968, Lengyel, J., affd 34 AD2d 1071) in its brief, but both are distinguishable. In Stuart-Bullock, claimant’s intestate’s car left the eastbound lanes for no ascertainable reason and collided with a car in the westbound lanes. The Appellate Division found no State negligence and the Court of Appeals affirmed those findings, but also found that any such would-be negligence was not shown to have been a factor in the subject car’s leaving said lanes, such leaving being the immediate cause of the accident. Here of course, the defective shoulder was at the least a very substantial factor in the Budd car’s precipitation from the shoulder into claimant’s lane and, as noted, this precipitation was the immediate cause of the accident. In Roberts, the Appellate Division affirmed because it found ample evidence to support the trial court’s finding that the sole cause of the accident was the speeding of the driver who crossed into claimant’s path, separate and independent of any State negligence. Here, there was no evidence of such speeding and, as observed, the condition of the shoulder was clearly a causative factor in Mrs. Budd’s loss of control of her car.

. A third alternative amount is the released tort-feasor’s (here Mrs. Budd’s) *571 equitable share under CPLR article 14. However, since defendant did not even raise any issue concerning such share, much less present proof thereon, we need only concern ourselves with the release’s $15,000. (See McLaughlin, Practice Commentary, McKinney’s Cons Laws of NY, Book 23A, General Obligations Law, § 15-108, p 719.)